U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

MAR 18 2026

FILED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

**NIKKI M. HARPER,**

    Plaintiff,

v.

BARRETT FINANCIAL GROUP LLC; TREVOR BARRETT; TINA THORNTON-LEWIS; UNITED WHOLESALE MORTGAGE LLC; NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER LOANS; LAKEVIEW LOAN SERVICING LLC; MARY YELTON REALTY LLC; TAYLOR MAX BOSWELL; ANNE MARIE KYZER; VANDERMORGAN REALTY LLC; JUSTIN BOLIN; CHRISTINA SCHRODER; FINDLEY, EDENFIELD & GREEN LLC; MARK GREEN; DANIELLE NEEF; ALL STAR HOME INSPECTIONS LLC; CHUCK TOLBERT; DWAYNE HIGDON; KRIS HARDY d/b/a HARDY APPRAISAL CO.; KATHRYN "KATIE" NIX FRENCH a/k/a KATHRYN A. NIX; STEVEN L. SYKES; and JOHN/JANE DOES 1-10,

    Defendants.

Case No. 1:25-CV-00203-JRH-BKE

## FIRST AMENDED COMPLAINT
(Superseding Complaint — Filed as of Right Pursuant to Fed. R. Civ. P. 15(a)(1)(B))

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

## I. INTRODUCTION

1. Plaintiff Nikki M. Harper ("Plaintiff" or "Ms. Harper"), a disabled United States Army veteran with service-connected PTSD, files this First Amended Complaint ("FAC") to correct and substantially expand the factual record in light of documents, admissions, and evidence obtained after the filing of the original complaint. This FAC supersedes the original complaint in its entirety and is filed as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) *within twenty-one days of the filing of a motion to dismiss.*

2. This action arises from a coordinated scheme involving real estate brokerage, mortgage brokerage, underwriting, appraisal, inspection, and closing services — all connected to Plaintiff's VA-backed purchase of 115 Carolyn Street, Sardis, Georgia 30456 (the "Property"), which closed on or about January 9, 2024.

3. Defendants, individually and in concert, engaged in the following unlawful conduct: (a) falsified and inflated Plaintiff's income and underwriting data to manufacture loan eligibility Plaintiff did not independently possess; (b) misrepresented the identity of the actual lender-creditor by designating Barrett Financial Group LLC — a mortgage broker — as "Lender" in

federally required closing disclosures, including the Closing Disclosure, Borrower Property Condition Certificate, and Appraisal Disclaimer; (c) concealed material property defects including mold growth, structural failures, an inoperable capped fireplace, unlicensed additions, electrical hazards, and flooding; (d) used unauthorized electronic signatures and produced materially inconsistent contract versions to conceal alterations made without Plaintiff's consent; (e) conducted a biased, coordinated inspection and appraisal process designed to hide known defects; (f) withheld Plaintiff's own transaction documents for approximately one year; (g) made false certifications on federal mortgage documents; and (h) continued to collect on the fraudulently originated loan while simultaneously defending this action.

4. Plaintiff is a disabled military veteran who suffers from PTSD. The year-long concealment of material documents, the financial harm caused by this transaction, and the ongoing pursuit of collection on a fraud-tainted loan have severely aggravated Plaintiff's condition, causing unintended weight loss, loss of appetite, disrupted sleep, and physical decline in health.

5. Mr. Cooper's own Mortgage Fraud Investigator, Kimberly Keeton, reviewed the transaction and documented in writing on September 10, 2024, that Plaintiff appeared to have a credible case for collusion involving all parties to the transaction. Despite this internal finding, Mr. Cooper filed a Motion to Dismiss this action with prejudice on February 27, 2026, while simultaneously pursuing Plaintiff for $15,186.59 in arrears on the fraud-tainted loan.


## II. PARTIES

6. Plaintiff Nikki M. Harper is a disabled United States Army veteran with service-connected PTSD, currently residing at 637 Toyota Drive, Ayden, North Carolina 28513. At all relevant times, Plaintiff was a VA-eligible consumer homebuyer acting in reliance on Defendants' representations, disclosures, and professional obligations.

7. Defendant Kathryn "Katie" Nix French (also known as Kathryn A. Nix) ("Seller") is the seller of record for the Property located at 115 Carolyn Street, Sardis, Georgia 30456. She is alleged to have knowingly concealed material property defects, participated in or permitted alterations to the purchase contract without Plaintiff's consent, and allowed or directed the unauthorized use of Plaintiff's electronic signature.

8. Defendant Mary Yelton Realty LLC is a real estate brokerage located at 310 Liberty Street, Waynesboro, Georgia 30830, that participated in the listing and seller-side conduct alleged *herein*.

9. Defendant Taylor Max Boswell is the owner/broker of Mary Yelton Realty LLC and bears supervisory responsibility for the conduct of its agents. Plaintiff is in possession of the seller's version of the sales contract, which was provided to Plaintiff directly by Max Boswell and which differs materially from the buyer's version, confirming that dual contracts were used in this transaction.

10. Defendant Anne Marie Kyzer is a licensed real estate agent (License #421441) with Mary Yelton Realty LLC who served as the seller's agent. She signed the FHA Amendatory Clause/Real Estate Certification on December 27, 2023, certifying that there were no

amendments or counteroffers other than those shown — a certification directly contradicted by documentary evidence of a materially altered contract.

11. Defendant VanderMorgan Realty LLC is a real estate brokerage located at 3401 Washington Road, Martinez, Georgia, that participated in buyer-side representation and the coordinated conduct alleged herein.

12. Defendant Justin Bolin is the owner/broker of VanderMorgan Realty LLC. Defendant Bolin is alleged to hold a position on the Georgia Real Estate Commission board, which impaired Plaintiff's ability to obtain meaningful administrative relief when a third-party witness reported the same pattern of conduct to the Commission.

13. Defendant Christina Schroder is a licensed real estate agent with VanderMorgan Realty LLC, located at 534 Marble Falls Road, Grovetown, Georgia 30815. She served as Plaintiff's buyer's agent. Defendant Schroder is a close personal friend of Defendant Tina Thornton-Lewis and, without disclosing this relationship, steered Plaintiff exclusively to Thornton-Lewis and Barrett Financial Group without shopping other lenders or considering Plaintiff's existing credit union relationship. Defendant Schroder also arranged the property inspection through All Star Home Inspections without neutral selection, and represented to Plaintiff that the roof was approximately four years old — a material misrepresentation.

14. Defendant Findley, Edenfield & Green LLC is a law firm located at 1030 Jimmie Dyess Parkway, Augusta, Georgia that participated in the closing and execution of instruments as alleged herein.

15. Defendant Mark Green is the closing attorney/notary at Findley, Edenfield & Green LLC. Defendant Green served as the closing attorney for both Plaintiff (buyer) and Seller Kathryn Nix French simultaneously — a fact Plaintiff did not discover until she physically walked into his office on the day of closing. This undisclosed dual representation created a direct and irreconcilable conflict of interest: an attorney cannot zealously represent the interests of both buyer and seller in the same real estate transaction. Defendant Green's obligation to disclose this conflict, obtain informed written consent from both parties, or decline the representation was violated entirely. His failure to disclose the dual representation prior to closing denied Plaintiff the ability to retain independent legal counsel for the transaction. Additionally, his firm email, mark@findlayedenfield.com, appeared in the recipient list of a coordinated UWM Consumer Advocate response sent to all transaction parties on August 20, 2025, evidencing ongoing communication among Defendants after the filing of this action.

16. Defendant Danielle Neef is identified as a witness on instruments executed at closing and participated in the closing process.

17. Defendant All Star Home Inspections LLC is a home inspection company with a mailing address of P.O. Box 293, Thomson, Georgia 30824. It was selected by Defendant Christina Schroder — rather than by Plaintiff — to conduct the property inspection.

18. Defendant Chuck Tolbert is the owner of All Star Home Inspections LLC. Following closing, Defendant Tolbert admitted via written communication that the HVAC system should have been serviced and cleaned as part of the transaction, and that the same was true of the fireplace and chimney — deficiencies that were not disclosed in the inspection report provided to Plaintiff.

19. Defendant Dwayne Higdon is the inspector employed by All Star Home Inspections LLC who conducted the subject inspection and produced an inspection report that failed to disclose known or readily discoverable defects.

20. Defendant Barrett Financial Group LLC ("Barrett") is a mortgage brokerage, not a lender, operating under NMLS Corp #181106, with offices at 2701 East Insight Way, Suite 150, Chandler, Arizona 85297. Despite being a broker, Barrett was falsely designated as "Lender" *in the Closing Disclosure, the Borrower Property Condition Certificate, and the Appraisal* Disclaimer — all of which are federally required disclosures. This misrepresentation violates TILA's requirement that the actual creditor be accurately disclosed.

21. Defendant Tina Thornton-Lewis is a mortgage loan originator employed by Barrett Financial Group LLC, with NMLS # 1248462, operating out of Nevada (phone: 775-815-1981). She is a close personal friend of Defendant Christina Schroder. Defendant Thornton-Lewis originated Plaintiff's VA loan without a Georgia mortgage loan originator license, as confirmed by NMLS records. Her December 5, 2023 Pre-Approval Letter was issued on Barrett Financial Group LLC letterhead and directed inquiries to her at Barrett Financial — further evidencing that Barrett acted as broker while UWM was the actual funding lender.

22. On or about November 2025 — after this lawsuit was filed — Defendant Trevor Barrett contacted Plaintiff directly via text message on her birthday, using language consistent with an automated or scripted message, stating happy birthday and offering to assist if she needed *anything. On January 9, 2026 — the two-year anniversary of the fraudulent closing —* Defendant Barrett again contacted Plaintiff directly via text message stating happy anniversary on her home purchase and again offering assistance. Plaintiff responded to both messages directing Defendant Barrett to cease all contact. These post-filing direct contacts by a named defendant with a pro se plaintiff constitute potential witness interference and harassment during active litigation. Plaintiff retains copies of all text messages.

23. Defendant Trevor Barrett is the owner of Barrett Financial Group LLC and bears ownership-level responsibility for the conduct and compliance failures of the entity.

24. Defendant United Wholesale Mortgage LLC ("UWM") is a wholesale mortgage lender headquartered at 585 South Boulevard E, Pontiac, Michigan 48341. UWM was the actual underwriter and funding lender for Plaintiff's VA loan. UWM performed the underwriting review of Plaintiff's loan application, ordered the appraisal through the VA Regional Loan Center in Atlanta, and received the completed loan file. UWM subsequently transferred loan *servicing to Mr. Cooper as subservicer for Lakeview Loan Servicing LLC, effective August* 2, 2024. Despite being the actual funding entity, UWM allowed closing documents to list Barrett — its broker — as "Lender," in violation of federal disclosure requirements. UWM's own Financial Investigation Unit made multiple attempts to contact Plaintiff regarding concerns with the loan, evidencing internal knowledge of potential irregularities.

25. Defendant Lakeview Loan Servicing LLC ("Lakeview") is a loan servicer that holds ownership interest in Plaintiff's loan and for which Mr. Cooper acts as subservicer. Lakeview received Mr. Cooper's mortgage fraud investigator's summary of findings, forwarded in October 2024, which documented Plaintiff's fraud allegations in detail.

26. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") is a mortgage servicer that began servicing Plaintiff's loan effective August 2, 2024, as subservicer for

Lakeview Loan Servicing LLC. Mr. Cooper's own Mortgage Fraud Investigator Kimberly Keeton conducted an investigation between August and October 2024, received substantial documentary evidence of fraud, and documented in writing that Plaintiff appeared to have a credible case for collusion involving all parties. Mr. Cooper thereafter ceased responding to Plaintiff, filed a Motion to Dismiss this action with prejudice on February 27, 2026, and simultaneously pursued Plaintiff for $15,186.59 in mortgage arrears on the fraud-tainted loan as of January 21, 2026.

27. Defendant Kris Hardy d/b/a Hardy Appraisal Co. ("Hardy") is a licensed fee appraiser assigned to appraise the Property. Despite the property's numerous material defects — including an inoperable capped fireplace, erroneous utility listings, non-existent driveway, original 1958 windows misrepresented as energy-efficient, and unlicensed additions — the appraisal reflected a value of $160,000, contained material inaccuracies, and was never reviewed with Plaintiff prior to closing.

28. Defendant Steven L. Sykes is an individual who performed pre-sale repair work on the Property, including HVAC servicing and electrical junction box work, as documented by an invoice provided to Plaintiff. Plaintiff alleges that Defendant Sykes performed this work without a required contractor's license and that the repairs were performed to cosmetically conceal known defects rather than to properly remediate them. Defendant Sykes participated in the seller-side concealment of material property defects.

29. John/Jane Does 1-10 are individuals and entities whose full identities and roles have not yet been confirmed through discovery but who participated in the conduct alleged herein. Plaintiff will amend to identify them as discovery proceeds.

## III. JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law, including RESPA (12 U.S.C. § 2601 et seq.), TILA (15 U.S.C. § 1601 et seq.), the Fair Housing Act (42 U.S.C. § 3601 et seq.), the Americans with Disabilities Act, the Rehabilitation Act, RICO (18 U.S.C. § 1962), and federal VA loan regulations (38 C.F.R. Parts 36 and 36.4).

31. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

32. Venue is proper in this District under 28 U.S.C. § 1391 because the Property is located within this District and a substantial part of the events and omissions giving rise to the claims occurred within this District.

## IV. STATEMENT OF FACTS

### A. Background and Pre-Transaction Conduct

33. Plaintiff, a disabled military veteran relying on her VA home loan benefit, engaged Defendant Christina Schroder of VanderMorgan Realty LLC as her buyer's agent in late 2023 to assist with the purchase of her first home.

34. Without disclosing her close personal friendship with Defendant Tina Thornton-Lewis, Defendant Schroder steered Plaintiff exclusively to Thornton-Lewis at Barrett Financial Group LLC for mortgage origination. Plaintiff was not advised of her right to shop multiple lenders, was not informed of her credit union as an alternative, and was actively discouraged from asking questions. This constitutes an undisclosed referral relationship creating a conflict of interest in violation of RESPA's anti-kickback provisions.

35. *Defendant Thornton-Lewis issued a Pre-Approval Letter dated December 5, 2023, on Barrett* Financial Group LLC letterhead, listing Plaintiff's Loan Program as VA, Purchase Price as $160,000, Loan Amount as $160,000, Down Payment as $0.00, and Interest Rate as 6.1250%-7.25%. The letter was signed by "Tina Thornton, nmls #1248462, Mortgage Advisor, Barrett Financial Group, L.L.C." Defendant Thornton-Lewis was located in Nevada at all relevant times and was not licensed as a Georgia mortgage loan originator, as confirmed by NMLS records. Originating a VA loan for a Georgia property without a Georgia MLO license violates Georgia mortgage licensing statutes and VA lender approval requirements.

36. Plaintiff had previously been informed by a different lender that her debt-to-income ratio was too high to qualify for a loan without a co-signer. Despite this, Defendants subsequently processed and obtained approval for Plaintiff for a $160,000 loan — raising substantial questions about how Plaintiff was qualified and whether income or underwriting inputs were falsified or inflated to achieve approval.

37. Defendant Schroder represented to Plaintiff that the Property's roof was approximately four years old (i.e., installed around 2019 or 2020). This representation was false and material to Plaintiff's decision to proceed.

38. Defendant Schroder pushed Plaintiff toward a purchase price of $160,000 — above the $150,000 listing price — a price increase that directly benefited her close friend Defendant Thornton-Lewis through a larger loan amount and correspondingly larger origination compensation.

## B. Inspection Misconduct

39. Rather than allowing Plaintiff to independently select a home inspector, Defendant Schroder arranged the inspection through All Star Home Inspections LLC. The selection of the inspector by the buyer's agent — rather than the buyer — removed an essential layer of independence from the inspection process.

40. *Defendants Chuck Tolbert and Dwayne Higdon of All Star Home Inspections conducted the* property inspection and produced a report that failed to disclose multiple material defects. Following closing, Defendant Tolbert admitted in writing that the HVAC system should have been serviced and cleaned as part of the transaction, and that the same obligation applied to the fireplace and chimney — both of which were not adequately disclosed to Plaintiff.

41. The Property contained the following material defects that were not disclosed to Plaintiff prior to or at closing: (a) five species of mold (Rhizomucor spp., Fusarium spp., Aureobasidium spp., Cladosporium spp., and Penicillium spp.) confirmed by laboratory testing in the second full bathroom (Mold Armor test, Sample #14038479, collected September 14, 2024, received September 23, 2024); (b) an inoperable capped fireplace — the fireplace was listed as functional in certain documents; (c) a non-compliant electrical breaker

box; (d) leaking skylights; (e) a rusted hot water heater sitting on the ground; (f) a sink-to-dishwasher backflow causing standing foul water; (g) structural breaches allowing wildlife entry; (h) a yard that floods with every storm; (i) unlicensed additions including the den/bedroom and bathrooms; (j) a tree on the Property that had previously fallen onto a neighbor's property — not disclosed; and (k) an HVAC system in need of servicing.

42. Defendant Kathryn Nix French and/or parties acting on her behalf performed renovations *and repairs on the Property without obtaining the required building permits.* Plaintiff conducted a search of public permit records at the appropriate local permitting authority and confirmed that no permits were requested or paid for in connection with any renovation or repair work performed on the Property prior to sale — with the sole exception of a minor electrical box permit valued at approximately forty to fifty dollars, for which the permit fee was never paid and which was never closed out. The failure to obtain required permits means that none of the renovation or repair work was inspected or certified by any governmental authority. Work performed without permits on a 1958-era home — including electrical, plumbing, HVAC, and structural work — poses serious safety hazards and constitutes a material defect that was required to be disclosed to Plaintiff prior to closing.

43. A third-party witness with independent knowledge of Defendants' business practices confirmed via written communication that she had experienced the same pattern of conduct involving VanderMorgan Realty and All Star Home Inspections. She took both realtors to a Georgia Real Estate Commission ethics hearing. Defendant Justin Bolin sat on the board that heard her complaint and ruled that nothing was wrong — dismissing her documented evidence of misconduct. The board characterized her legitimate fraud complaint as 'extreme buyer's remorse,' a characterization that served to protect the very defendants whose conduct was under review. This witness further stated that the company preys on first-time homebuyers. Defendant Bolin's presence on the board that adjudicated complaints against his own agents constitutes a structural conflict of interest that denied both this witness and Plaintiff meaningful access to administrative relief.

## C. Appraisal Fraud and Misrepresentation

44. The Property was appraised by Defendant Kris Hardy of Hardy Appraisal Co. on December 19, 2023, at a value of $160,000. The appraisal contained the following material inaccuracies, documented by Plaintiff in detailed written correspondence to Mr. Cooper's fraud investigator on September 3, 2024: (a) the neighborhood description was inaccurate — shopping was approximately 20 minutes away, and the nearest VA Hospital was approximately 45 minutes away; (b) utilities were listed as both electric and gas — the property is all-electric; (c) the property was described as having a driveway — no paved driveway exists, only grass and dirt; (d) the home was listed as energy efficient with insulated windows — the property retains its original 1958 single-pane windows, resulting in electric bills exceeding $250 per month; and (e) the fireplace was listed as operational gas propane vented — it is capped and completely inoperable.

45. UWM's July 15, 2025 CFPB response letter claimed that the appraisal order was assigned to Mr. Hardy by the VA Regional Loan Center in Atlanta. This representation is directly contradicted by Plaintiff's evidence establishing that Barrett Financial Group LLC ordered and paid for the appraisal. The VA does not order or pay for appraisals in VA purchase loan transactions — the lender or broker bears that responsibility. Barrett's ordering and payment

of the appraisal while simultaneously acting as the loan originator constitutes a direct violation of appraisal independence requirements under FIRREA (12 U.S.C. § 3353), VA regulations (38 C.F.R. § 36.4354), and TILA's Regulation Z appraisal independence rules (12 C.F.R. § 1026.42). UWM's false representation to a federal regulator that the VA ordered the appraisal may itself constitute a material false statement in a regulatory proceeding.

46. The UWM Lender's Notice of Value, issued December 19, 2023, and signed by Appraisal *Reviewer Anthony DeLuca (ID 022175), was issued on United Wholesale Mortgage LLC* letterhead and addressed to Plaintiff at her prior address of 103 Chelsea Drive, Snow Hill, NC 28580. The Notice was not reviewed with Plaintiff prior to closing — Plaintiff was simply presented with the Appraisal Receipt and directed to sign.

**D. Contract Fraud, Signature Misuse, and Dual Contracts**

47. At closing, Plaintiff signed one stack of documents while the Seller signed a separate stack. Plaintiff later learned that these were not duplicate copies but materially different versions, and that Plaintiff was not provided a complete and accurate copy of the full transaction file at closing.

48. Plaintiff is in possession of two materially different versions of Amendment #1 to the purchase contract. One version was provided to Plaintiff; a second version — obtained from Defendant Max Boswell of Mary Yelton Realty — contains different terms, demonstrating that dual contracts were used in this transaction. Plaintiff notified Defendant UWM of this fact by written demand letter and provided photographic evidence.

49. Defendant Kathryn Nix French amended the contract and applied Plaintiff's electronic signature without Plaintiff's knowledge or consent to make it appear that Plaintiff had agreed to purchase the home with a capped, inoperable fireplace. Plaintiff filed a police report regarding this unauthorized use of her electronic signature. Mr. Cooper's fraud investigator specifically referenced this report in her August 29, 2024 inquiry, asking: "You mentioned in the police report that the seller made changes to the purchase agreement and used your signature without your consent."

50. When Plaintiff demanded her complete transaction file and requested hard copies from all parties, Defendant Mark Green responded via email with a version of the contract file that differed materially from what Plaintiff had received at closing. Upon reviewing Defendant Green's version, Plaintiff discovered for the first time that it contained the VA paperwork, the security deed, and numerous other closing instruments that had never been included in Plaintiff's copy of the contract. Defendant Green's contract file also contained documents bearing a different signature — further evidencing that two different document packets were used at closing. The deliberate withholding of these instruments from Plaintiff's closing package deprived her of the ability to review and understand the full terms of her transaction, including the security deed encumbering her property.

51. Defendants maintained contract packets that included material amendments and other documents that were withheld from Plaintiff's copy. Plaintiff was denied access to her complete contract file for approximately one year and received documents only after she paid the federal filing fee and initiated this lawsuit. This deliberate delay demonstrates intentional concealment, awareness of wrongdoing, and an effort to impair Plaintiff's ability to detect fraud and seek timely relief.

## E. Lender Misidentification and TILA Violations

52. The Closing Disclosure for Plaintiff's loan, dated January 8, 2024, lists the "Lender" as Barrett Financial Group, L.L.C. The Borrower Property Condition Certificate, dated January 9, 2024, identifies Barrett Financial Group, L.L.C. as the lender for indemnification purposes. The Appraisal Disclaimer, also dated January 9, 2024, lists the "Lender" as Barrett Financial Group, L.L.C. All three documents bear Plaintiff's signature.

53. Barrett Financial Group LLC is a mortgage broker, not a lender. UWM was the actual underwriter and funding lender, as confirmed by UWM's own July 15, 2025 CFPB response letter and the Notice of Servicing Transfer. The designation of Barrett as "Lender" in federally required disclosures is a material misrepresentation that violated TILA's requirement that the actual creditor be clearly and accurately identified, deprived Plaintiff of her right to know the true nature of the lending relationship, and created false indemnification obligations running to Barrett rather than to the actual funding entity.

54. The Notice of Servicing Transfer, issued at closing on January 9, 2024, listed Barrett Financial Group LLC as the "Current Servicer" transferring to UWM — further blurring the distinction between broker and lender in a manner that served to obscure the true structure of the transaction from Plaintiff.

## F. Mr. Cooper's Internal Fraud Investigation and Subsequent Concealment

55. In August 2024, Mr. Cooper's Mortgage Fraud Investigator Kimberly Keeton opened a formal internal investigation into Plaintiff's loan following Plaintiff's reports of fraud. Ms. Keeton's contact information at the time of the investigation was: Kimberly.Keeton@mrcooper.com, (972) 316-8712, 8950 Cypress Waters Blvd., Coppell, TX 75019.

56. On August 29, 2024, Ms. Keeton sent Plaintiff a written inquiry acknowledging the substance of Plaintiff's allegations and asking four specific questions including: "You mentioned in the police report that the seller made changes to the purchase agreement and used your signature without your consent." Ms. Keeton attached the appraisal to this communication.

57. On September 3, 2024, Plaintiff provided Ms. Keeton with detailed documentation of the six specific appraisal discrepancies, copies of the dual contract versions, the home inspection report, and other supporting evidence.

58. On September 6, 2024, Ms. Keeton confirmed receipt of all documents, stating: "yes I have received your emails and documents. Sorry it takes some time to gather all the evidence and put it in order."

59. On September 10, 2024, Ms. Keeton sent Plaintiff a written communication stating, in relevant part, that Plaintiff appeared to have a credible case for collusion if she believed all of the parties involved were working together and for each other rather than for the consumer, and noting that since all parties were in the real estate business, Plaintiff could report all of them to the Real Estate Commission — including Tina Thornton. This constitutes Mr. Cooper's own investigator's documented acknowledgment of a credible fraud and collusion case.

60. On October 10, 2024, Ms. Keeton informed Plaintiff that she had forwarded a summary of her findings to Lakeview, UWM, and the VA. This confirmed that Mr. Cooper's internal investigation reached the other institutional defendants. Despite this, all three entities subsequently denied wrongdoing and refused to cooperate with Plaintiff.

61. Following October 2024, Mr. Cooper ceased responding to Plaintiff and ultimately filed a Motion to Dismiss this action with prejudice on February 27, 2026, while simultaneously *sending Plaintiff collection notices demanding $15,186.59 in mortgage arrears and* threatening foreclosure.

## G. UWM's CFPB Responses and Additional Admissions

62. In its July 15, 2025 CFPB response letter, UWM confirmed that: (a) UWM performed the underwriting review of Plaintiff's loan; (b) UWM identified the appraisal as having been ordered through the VA Regional Loan Center in Atlanta — a representation that, if inaccurate, constitutes a false statement to a federal regulator; (c) UWM transferred loan servicing to Mr. Cooper as subservicer for Lakeview effective August 2, 2024; and (d) UWM's own Financial Investigation Unit made multiple attempts to contact Plaintiff regarding concerns — evidencing that UWM itself identified potential issues with the loan.

63. In its September 15, 2025 CFPB response, UWM acknowledged Plaintiff's pending federal lawsuit and declined to provide a substantive response through the CFPB portal, stating it would address the allegations through defense counsel. This response confirms UWM's awareness of the lawsuit and its decision to engage legal representation rather than address Plaintiff's documented concerns.

64. On August 20, 2025, UWM's Consumer Advocate (consumeradvocate@uwm.com) responded to Plaintiff's final demand for transaction records by copying the following parties in a single communication: Max Boswell (mb362@bellsouth.net), Anne Marie Kyzer (amkyzer@gmail.com), Barrett Financial (loans@barrettfinancial.com), Mark Green (mark@findlayedenfield.com), the closing firm (closings@feglawfirm.com), and Tina Thornton (TinaT@barrettfinancial.com). This coordinated, multi-party response — sent simultaneously to all transaction defendants — constitutes direct evidence of ongoing coordination and communication among Defendants following the filing of this action.

## H. Barrett Financial's Non-Response

65. In response to Plaintiff's demands for transaction records, Barrett Financial Group LLC, through Compliance Manager Brian Morgan, sent a letter stating only that all documentation relevant to the loan had already been provided and that Barrett considered its obligations fully satisfied. Barrett provided no substantive response to Plaintiff's documented allegations of fraud, dual contracts, or misrepresentation of its role as lender.

66. Separately, in written communications to Plaintiff, Defendant Brian Morgan of Barrett Financial Group LLC made the following materially false statements: (a) that Defendant Tina Thornton-Lewis no longer worked for Barrett Financial Group and was employed by Texarkana Bank — a statement that is false, as Defendant Thornton-Lewis continued to work for Barrett Financial Group LLC after the date of that representation; and (b) that Defendant Thornton-Lewis was 'part of a team' that worked on Plaintiff's loan — a characterization directly contradicted by the fact that Plaintiff exclusively communicated with Defendant Thornton-Lewis throughout the entire loan origination process and had no contact with any

other Barrett team member. These false statements were made to minimize the appearance of Thornton-Lewis's individual exposure and to distance Barrett from the unauthorized loan origination activities alleged herein.

## I. FHA Amendatory Clause Violation

67. The FHA Disclosures Amendatory Clause/Real Estate Certification, dated December 11, 2023 (signed by Borrower Nikki M. Harper on 12/11/23 and by Real Estate Agent Anne Marie Kyzer on 12/27/2023), contains a Real Estate Certification in which all signing parties certified that the terms and conditions of the sales contract were true and correct, that no other agreement had been entered into, and that there were no amendments or counteroffers other than those shown. Defendant Anne Marie Kyzer signed this federal certification on December 27, 2023. The existence of dual, materially different contract versions — one withheld from Plaintiff — directly contradicts this certification and constitutes a false statement on a federally required mortgage document, in violation of 18 U.S.C. §§ 1012 and 1014 (the Certification document itself warns that knowing false statements constitute a Federal Crime punishable by fine, imprisonment, or both under Title 18, United States Code, Section 1012 and 1014).

## J. Credit Reporting Harm and Ongoing Collection

68. Following closing, UWM and subsequently Mr. Cooper reported multiple tradelines and/or the appearance of multiple mortgages on Plaintiff's credit file, resulting in denial of credit and higher-cost financing.

69. Mr. Cooper engaged in servicing and loss-mitigation activity — including property inspections, the accrual of legal fees, and collection notices — while fraud disputes were active, creating additional financial harm and risk of foreclosure on a fraud-tainted loan. As of January 21, 2026, Mr. Cooper's loan statement reflects: a principal balance of $164,622.06; total fees and charges of $13,708.58; legal fees listed in the Lender Paid Expenses of $3,057.58; and a total amount due of $15,186.59.

## V. CLAIMS FOR RELIEF

Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth in each Count below. Each count is pleaded in the alternative as permitted by the Federal Rules of Civil Procedure. Plaintiff will refine legal theories as discovery proceeds.

## COUNT I — FRAUD, FRAUDULENT INDUCEMENT, AND CONCEALMENT (State Law — All Defendants Including Mr. Cooper/Nationstar, UWM, Lakeview)

70. Defendant Mr. Cooper/Nationstar, upon acquiring servicing rights to Plaintiff's loan, had a legal obligation to conduct due diligence on the loan file it acquired. The fraud was visible in the file — income inflation, document discrepancies, appraisal inaccuracies, and dual contract versions. Mr. Cooper cannot claim ignorance: its own fraud investigator opened a formal investigation, gathered substantial evidence, and documented a credible case of collusion. Mr. Cooper then went silent, ceased cooperating with Plaintiff, filed a Motion to Dismiss, and simultaneously pursued foreclosure collection. This conduct — acquiring a

fraudulent loan, conducting a fraud investigation revealing the fraud, and then concealing those findings while pursuing collection — constitutes independent fraudulent concealment.

71. Defendants made material misrepresentations and omitted material facts, including but not limited to: the true condition of the Property; the existence and content of contract amendments; the identity of the actual lender-creditor; the accuracy of the appraisal; the existence and nature of Defendant Schroder's undisclosed referral relationship with *Defendant Thornton-Lewis; and the operational status of the fireplace, HVAC, and other* systems.

72. Defendants concealed or delayed production of Plaintiff's own transaction documents for approximately one year, producing them only after Plaintiff paid the federal filing fee and filed this lawsuit. This deliberate concealment was intended to and did impair Plaintiff's ability to detect the fraud and seek timely relief.

73. Plaintiff reasonably relied on Defendants' representations and omissions to proceed with the purchase and loan transaction, to her substantial financial detriment.

74. Plaintiff suffered damages including financial loss, credit harm, costs of living in a structurally deficient and mold-contaminated property, emotional distress, and physical harm.

## COUNT II — NEGLIGENT MISREPRESENTATION / NEGLIGENCE (State Law — All Defendants)

75. Defendants owed Plaintiff duties of reasonable care in providing information, conducting inspections, performing appraisals, handling disclosures, and administering the closing and recording process.

76. Defendants breached those duties by providing false or incomplete information, failing to disclose known risks, failing to ensure proper execution and recording of instruments, and producing an inspection report and appraisal that did not accurately reflect the condition of the Property.

77. Plaintiff relied on Defendants' representations and was harmed as a direct and proximate result.

## COUNT III — RESPA (12 U.S.C. § 2601 et seq.) — Barrett, UWM, Thornton-Lewis, Schroder, Mr. Cooper, Lakeview)

78. Defendants violated RESPA through: (a) the payment or receipt of fees, kickbacks, or things of value in connection with a federally related mortgage loan through the undisclosed referral relationship between Defendants Schroder and Thornton-Lewis, in violation of 12 U.S.C. § 2607; (b) failures to provide accurate and timely disclosures, including the Servicing Transfer Notice and the HUD-1/Closing Disclosure; and (c) servicing-related misconduct by Mr. Cooper and Lakeview, including inaccurate reporting and failure to reasonably respond to Plaintiff's qualified written requests and fraud disputes.

79. Plaintiff suffered actual damages as a direct and proximate result of these violations.

80. Plaintiff seeks all remedies available under RESPA, including actual damages, treble damages, statutory damages, costs, and attorneys' fees.

## COUNT IV — TILA (15 U.S.C. § 1601 et seq.) — Barrett, UWM, Thornton-Lewis

81. Defendants violated TILA by: (a) failing to accurately identify the actual creditor in the required disclosures — designating Barrett Financial Group LLC, a mortgage broker, as "Lender" in the Closing Disclosure, Borrower Property Condition Certificate, and Appraisal Disclaimer, when UWM was the actual funding lender; (b) using inaccurate underwriting inputs and documentation that undermined Plaintiff's informed consent to the loan terms; and (c) failing to provide complete and accurate material loan disclosures required by TILA and Regulation Z.

82. Plaintiff seeks all remedies available under TILA, including statutory damages, actual damages, rescission where applicable, and any other relief permitted by law.

## COUNT V — FAIR HOUSING ACT (42 U.S.C. § 3601 et seq.) — All Defendants

83. Plaintiff is a disabled person within the meaning of the Fair Housing Act. Defendants discriminated against Plaintiff on the basis of disability by: engaging in practices that had an unlawful discriminatory effect on disabled veterans; failing to reasonably accommodate Plaintiff's disability-related limitations during the transaction; and exploiting Plaintiff's disability-related vulnerabilities — including her PTSD — in ways that foreseeably caused disproportionate harm.

84. Defendants denied Plaintiff full and equal participation in a housing transaction, withheld documents that a non-disabled buyer would reasonably have received, and subjected Plaintiff to a fraudulent scheme that caused physical and psychological harm aggravating her service-connected disability.

85. Plaintiff seeks all remedies available under the Fair Housing Act including compensatory damages, injunctive relief, and civil penalties.

## COUNT VI — ADA AND/OR REHABILITATION ACT — As Applicable

86. Defendants' conduct violated disability rights protections as previously pleaded, including denial of meaningful access and failure to accommodate Plaintiff's disability-related limitations during a federally connected housing and mortgage transaction.

87. Plaintiff seeks appropriate relief available under applicable disability-rights statutes.

## COUNT VII — VA LOAN FRAUD / FEDERAL REGULATORY VIOLATIONS — Barrett, Thornton-Lewis, UWM, Hardy

88. Plaintiff's loan was a VA-guaranteed loan subject to 38 C.F.R. Part 36 and VA lender approval requirements. Defendants violated applicable VA regulations by: (a) allowing

origination by a mortgage loan originator not licensed in Georgia; (b) submitting or allowing submission of inaccurate underwriting data to obtain VA loan approval; (c) ordering, influencing, or interfering with the appraisal in a manner that violated VA appraisal independence requirements; and (d) misrepresenting material facts in connection with the VA loan application and closing.

89. These violations gave rise to a fraudulent VA loan transaction that caused Plaintiff *substantial harm and that exposed the VA's guaranty program to loss.*

## COUNT VIII — RICO (18 U.S.C. § 1962(c) and § 1962(d)) — All Defendants

90. An enterprise existed among Defendants and/or associated persons-in-fact that engaged in a pattern of racketeering activity related to residential real estate transactions and mortgage origination in the Augusta, Georgia area.

91. Defendants engaged in predicate acts of wire fraud and mail fraud including: (a) the use of overlapping electronic signature platforms — specifically both AuthentiSign and DocuSign — on the same transaction documents, including Plaintiff's own contracts. This overlap is not a technical anomaly; it evidences that documents were processed through multiple electronic signature systems, enabling the insertion, alteration, or substitution of signature pages without the signer's knowledge or consent. Every party whose documents reflect this AuthentiSign/DocuSign overlap — including Defendants Schroder, Bolin, Thornton-Lewis, Barrett, Green, Neef, and Nix French — participated in or had knowledge of a document execution process that facilitated wire fraud through interstate electronic communications; (b) the transmission of falsified underwriting documents and materially altered contract versions via interstate electronic wire; (c) UWM's coordinated multi-party wire communication of August 20, 2025 simultaneously copying all transaction defendants; (d) the transmission of false statements to federal regulators through the CFPB portal; and (e) use of DocMagic to generate closing documents designating Barrett Financial — a broker — as Lender across multiple federally required instruments, transmitted via interstate wire.

92. The scheme exhibited a pattern of racketeering activity, as evidenced by: (a) an independent third-party witness reporting the same pattern of conduct involving the same defendants in a prior real estate transaction; (b) UWM's simultaneous coordination with all transaction parties in response to Plaintiff's demand; and (c) the systematic concealment of transaction *documents for approximately one year.*

93. Defendants conducted or participated in the enterprise's affairs through the pattern of racketeering activity and conspired to do so in violation of 18 U.S.C. § 1962(d).

94. Plaintiff suffered injury to business or property, including financial loss, property-related losses, credit harm, and costs incurred, proximately caused by the racketeering conduct. Plaintiff seeks treble damages, costs, and attorneys' fees under 18 U.S.C. § 1964(c).

## COUNT IX — CIVIL CONSPIRACY (State Law — All Defendants)

95. Defendants agreed and acted in concert to accomplish unlawful objectives, including originating a loan for which Plaintiff did not qualify, concealing material property defects,

falsifying underwriting data, misrepresenting the lender's identity, altering contract documents without Plaintiff's consent, and collectively concealing Plaintiff's transaction file to impair her ability to seek legal redress.

96. The coordinated August 20, 2025 UWM Consumer Advocate email — sent simultaneously to all transaction defendants — constitutes direct evidence of ongoing post-filing coordination among the conspirators.

97. Plaintiff was substantially harmed as a result of this conspiracy.

## COUNT X — DECLARATORY AND INJUNCTIVE RELIEF

98. An actual controversy exists concerning the validity and enforceability of the loan instruments, disclosures, and recordings connected to the Property and this transaction.

99. Plaintiff seeks declaratory relief establishing that: (a) the loan instruments are unenforceable or voidable due to fraud in the origination; (b) the Borrower Property Condition Certificate is void as obtained under fraud and through unauthorized document presentation; and (c) the designation of Barrett Financial Group LLC as "Lender" in federally required disclosures is void and of no legal effect as to Plaintiff.

100. Plaintiff further seeks injunctive relief to prevent further harm, including foreclosure *actions based on fraud-tainted instruments, pending resolution of this matter.*

## VI. DAMAGES

101. Plaintiff seeks compensatory damages for: financial losses and costs of the fraudulent transaction; repair and remediation costs; loss of benefit of bargain; credit damage and denial of financing; increased financing costs; out-of-pocket expenses; and costs of investigating and documenting the fraud.

102. Plaintiff seeks damages for emotional distress, mental anguish, aggravation of service-connected PTSD, and disability-related harms including physical manifestations such as unintended weight loss and decline in health.

103. Plaintiff seeks statutory damages under RESPA, TILA, the Fair Housing Act, and other applicable statutes.

104. Plaintiff seeks treble damages under RICO and any other statute so permitting.

105. Plaintiff seeks punitive damages where applicable, given the intentional, knowing, and coordinated nature of Defendants' conduct.

106. Plaintiff seeks costs of suit and any other relief authorized by law.

107. Plaintiff seeks the following categories of damages in full, without limitation: (a) compensatory damages for the full purchase price of the fraudulently obtained property ($160,000); (b) compensatory damages for all closing costs and fees paid ($5,909.28 in closing costs; $1,289.70 cash to close); (c) compensatory damages for all mortgage payments made on a fraud-tainted loan; (d) compensatory damages for the cost of mold remediation and all necessary property repairs and rehabilitation; (e) compensatory damages for all out-

of-pocket costs of investigating and documenting the fraud, including testing, laboratory fees, and related expenses; (f) compensatory damages for credit harm and financial losses resulting from improper credit reporting, including denial of credit and increased financing costs; (g) compensatory damages for the ongoing accrual of fees, legal costs, and interest charges ($13,708.58 in fees and charges as of January 2026) added to Plaintiff's loan balance during active fraud disputes; (h) statutory damages under RESPA including up to $2,000 per violation plus actual damages and attorneys' fees under 12 U.S.C. § 2605; (i) statutory damages under TILA of not less than $200 and up to $2,000 per violation under 15 U.S.C. § 1640; (j) damages under the Fair Housing Act including compensatory damages, injunctive relief, and civil penalties up to $16,000 for a first violation under 42 U.S.C. § 3612; (k) treble damages and attorneys' fees under RICO, 18 U.S.C. § 1964(c); (l) punitive damages for the intentional, knowing, coordinated, and malicious nature of Defendants' conduct; (m) damages for emotional distress, mental anguish, pain and suffering, and aggravation of service-connected PTSD, including physical manifestations of unintended weight loss, sleep disruption, and loss of appetite; (n) damages for loss of use and enjoyment of the Property; (o) any available rescission of the loan and cancellation of the mortgage lien on fraud grounds; (p) injunctive relief prohibiting foreclosure proceedings pending resolution of this matter; and (q) any and all other damages, statutory relief, equitable relief, and remedies available under any applicable federal or state law that this Court finds just and proper, whether or not specifically enumerated herein. Plaintiff expressly reserves the right to amend this damages request as additional categories of harm are identified through discovery.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nikki M. Harper respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against all Defendants;

2. Award compensatory damages in an amount to be proven at trial;

3. Award statutory damages under all applicable federal statutes;

4. Award treble damages under RICO and any other applicable statute;

5. Award punitive damages as permitted by law;

6. Grant declaratory relief as to the invalidity and unenforceability of the fraud-tainted loan instruments;

7. Grant injunctive relief preventing foreclosure or further collection action on the fraud-tainted loan pending resolution of this matter;

8. Award costs of suit; and

9. Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

_Nikki M. Harper_ (signature)

Nikki M. Harper, Plaintiff (Pro Se)

1529 Pine Brook Court, Apt. 2

Greenville, NC 27858

Phone: 762-622-0511

Email: harperdenece@gmail.com

Date: ___12 March 2026___

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I filed the foregoing First Amended Complaint with the Clerk of the United States District Court for the Southern District of Georgia, Augusta Division, by depositing the same in the United States Mail, First Class postage prepaid. This First Amended Complaint is filed as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) within twenty-one days of the filing of a motion to dismiss. Service on all counsel of _record who have appeared in this action will be effectuated through the Court's docketing and_ notification process. Plaintiff is registered with CM/ECF but, as a pro se litigant, is not permitted to electronically file documents and therefore files all documents by First Class Mail or hand delivery.

_Nikki M. Harper_ (signature)

Nikki M. Harper, Pro Se Plaintiff

Date: ___12 March 2026___

PRESS FIRMLY TO SEAL                    PRESS FIRMLY TO SEAL





# UNITED STATES POSTAL SERVICE ®

# PRIORITY® MAIL

ected delivery date specified for domestic use.

mestic shipments include $100 of insurance (restrictions apply).*

PS Tracking® service included for domestic and many international destinations.

iited international insurance.**

en used internationally, a customs declaration form is required.

nce does not cover certain items. For details regarding claims exclusions see the
stic Mail Manual at *http://pe.usps.com.*

International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

AT RATE ENVELOPE

RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

ACKED ■ INSURED


PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2




PAPER POUCH

US POSTAGE AND FEES PAID
PRIORITY MAIL IMI
Mar 13 2026
Mailed from ZIP 27858
PRIORITY MAIL
ZONE 4 FLAT—RATE ENV
10580954
Commercial


endicia
06380011485637

## USPS PRIORITY MAIL

Nikki Harper
1529 PINEBROOK CT APT 2
GREENVILLE NC 27858

C065

Shipped using PostalMate
Pkg:376097


SHIP TO: Southern District of Georgia — Augusta Div.
Clerk of Court — United States District Court
600 James Brown Blvd
AUGUSTA GA 30901

### USPS TRACKING #



9405 5508 9956 2032 1080 74





SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.