IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

NIKKI HARPER,

                Plaintiff,

vs.

BARRETT FINANCIAL GROUP, LLC, et.

al.,

                Defendants.

Civil Action No.
1-25-cv-00203-JRH-BKE

## DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The Court should dismiss the claims against Barrett Financial Group, LLC because Plaintiff's First Amended Complaint (FAC) does not state a plausible, defendant-specific claim for relief against it. The pleading is long, but length is not substance. Federal pleading rules require the pleader to identify who did what, when, how, and why the law affords relief. This FAC does not do so.

Instead, the FAC casts a wide net over a crowded transaction, names Barrett among many actors, and leaves the Court and the parties to infer which facts supposedly support which claims against which defendant. That is insufficient under Rule 8. Where the theory sounds in fraud, it is nowhere near enough under Rule 9(b), which requires the pleader to state with particularity the circumstances constituting the alleged fraud. And where the pleading invokes TILA, Regulation Z, RICO, and similar statutory theories, Local Rule 9.1 requires Plaintiff to specifically state each alleged violation. The FAC repeatedly falls short of those standards.

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The statutory counts fare no better on the merits. As pleaded, they either fail to identify the governing elements with precision, collapse distinct legal theories into one another, or seek relief the statutes do not provide. Several also are untimely on the face of the pleading itself. What remains is a complaint expansive in accusation but uncertain in law.

## PLAINTIFF'S OWN ALLEGATIONS PLACE BARRETT AT THE PERIPHERY, NOT THE CENTER, OF THE DISPUTE

For purposes of this Motion only, Barrett Financial Group LLC summarizes the allegations in the First Amended Complaint directed to Barrett, without adopting Plaintiff's characterizations, legal conclusions, or inferences. Taken on their own terms, those allegations do not place Barrett at the center of the alleged misconduct. They place Barrett in a limited role at the edge of a broader transaction involving multiple parties, documents, and legal theories.

That distinction matters. The FAC often speaks of "Defendants" collectively, but liability is not established collectively. A complaint must connect each defendant to specific conduct supporting each claim. As to Barrett, the FAC does not do so with consistency or precision.

Plaintiff alleges that Barrett is a mortgage brokerage, not a lender, with offices in Chandler, Arizona. (Doc. 29, ¶ 20, at 4.) Plaintiff also alleges that certain closing documents—the Closing Disclosure, Borrower Property Condition Certificate, and Appraisal Disclaimer—identified Barrett as "Lender." Id.; see also id. ¶¶ 52-53, at 9. Those allegations pull in different directions. Plaintiff pleads Barrett was not the lender, then relies on forms using that label. The FAC never bridges the gap between an allegedly inaccurate label and a viable claim against Barrett.

Plaintiff further alleges that Tina Thornton-Lewis was a mortgage loan originator employed by Barrett and issued Plaintiff a December 5, 2023 pre-approval letter on Barrett letterhead. (Doc. 29, ¶¶ 21, 35, at 4, 6.) According to the FAC, the letter identified the transaction

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

as a VA loan and listed a purchase price and loan amount of $160,000. *Id*. ¶ 35, at 6. These allegations describe preliminary loan-origination activity. They do not, without more, identify actionable misconduct by Barrett.

As to the referral, Plaintiff alleges that her buyer's agent steered her to Thornton-Lewis and Barrett for mortgage origination and did not advise her to shop other lenders or consider her existing credit union relationship. (Doc. 29, ¶ 34, at 5-6.) Plaintiff characterizes that referral arrangement as improper and as a RESPA violation. *Id*. But the pleaded conduct is attributed primarily to Plaintiff's agent, not Barrett. The FAC does not allege facts showing what Barrett gave, received, promised, or agreed to in connection with the alleged referral. It offers a conclusion, not particulars.

Plaintiff also alleges that Barrett ordered and paid for the appraisal, notwithstanding a separate representation Plaintiff attributes to UWM concerning the VA Regional Loan Center. (Doc. 29, ¶ 45, at 7-8.) Plaintiff contends that Barrett's involvement was inconsistent with appraisal-independence requirements. Id. Again, however, the FAC does not identify the rule Barrett allegedly violated, the conduct that made the appraisal improper, or how Barrett's alleged act caused Plaintiff a cognizable injury.

Plaintiff's principal allegations against Barrett concern the loan and closing documents. Plaintiff alleges that the January 8, 2024 Closing Disclosure listed Barrett Financial Group, L.L.C. as "Lender"; that the January 9, 2024 Borrower Property Condition Certificate likewise identified Barrett as lender for indemnification purposes; and that the January 9, 2024 Appraisal Disclaimer also listed Barrett as "Lender." (Doc. 29, ¶ 52, at 9.) Plaintiff alleges that all three documents bore her signature. *Id*. Yet Plaintiff also alleges that UWM, not Barrett, was the "actual underwriter and funding lender," and that Barrett's identification as "Lender" was inaccurate. (*Id*. ¶¶ 24, 53, at 4,

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

9.) Plaintiff further alleges that the Notice of Servicing Transfer issued at closing identified Barrett as the "Current Servicer" transferring servicing to UWM. *Id*. ¶ 54, at 9.

At most, those allegations suggest Plaintiff disputes terminology used in certain closing documents. They do not show that Barrett funded the loan, underwrote the loan, serviced the loan after transfer, or controlled the conduct Plaintiff attributes to other parties. Indeed, Plaintiff's own allegations identify UWM as the "actual underwriter and funding lender." (*Id*. ¶¶ 24, 53, at 4, 9.) That pleading choice matters.

The post-closing allegations are similarly limited. Plaintiff alleges that, after the transaction and after she began demanding records, Barrett responded through Compliance Manager Brian Morgan by stating that all documentation relevant to the loan had been provided and that Barrett considered its obligations satisfied. (Doc. 29, ¶ 65, at 10.) Plaintiff further alleges that Morgan later stated Thornton-Lewis no longer worked for Barrett and had been "part of a team" that worked on Plaintiff's loan, statements Plaintiff characterizes as false. *Id*. ¶ 66, at 10-11. But the FAC does not plead facts showing why those statements were false, how Barrett knew they were false, or how they support the claims asserted.

The counts confirm the problem. The FAC expressly names Barrett in Count III for RESPA, Count IV for TILA, and Count VII for alleged VA loan fraud and regulatory violations. (Doc. 29, ¶¶ 78, 81, 88, at 12-13.) It also includes Barrett within Count VIII, the civil RICO count asserted against "All Defendants." *Id*. ¶¶ 90-94, at 14. By contrast, Count I for "Fraud, Fraudulent Inducement, and Concealment" and Count II for "Negligent Misrepresentation / Negligence" are pleaded collectively against "Defendants" and do not separately identify Barrett's particular conduct. *Id*. ¶¶ 70-77, at 11-12.

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

That is the recurring defect. Barrett appears in the FAC, but often as part of a group. The pleading relies on labels—"lender," "servicer," "Defendants," "fraud," "RICO"—without tying them to well-pleaded facts showing Barrett's actual role in each claim. A complaint may proceed on facts, not fog.

Thus, even accepting the FAC's factual allegations for purposes of this Motion, Barrett is not pleaded as the central actor in the alleged misconduct. Plaintiff's own allegations describe Barrett as a mortgage brokerage involved in origination-related activity, named in certain documents, and later responsive to record requests. That is not enough to sustain the broad claims Plaintiff asserts. The FAC places Barrett at the periphery, not the center, and the claims against Barrett should be dismissed.

## LEGAL STANDARDS

### FED. R. CIV. P. 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, the complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible only when the pleaded facts permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Although the Court accepts well-pleaded factual allegations as true at this stage, it does not accept legal conclusions couched as factual allegations, nor does it credit "[t]hreadbare recitals of the elements of a cause of action" supported only by conclusory statements. *Id.* Likewise, "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the

factual allegations must raise the right to relief above the speculative level and nudge the claim "across the line from conceivable to plausible." *Id.* at 555, 570.

A limitations defense may likewise be resolved on a Rule 12(b)(6) motion when the defect is apparent from the face of the complaint. *See La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004). Where the plaintiff's own pleading supplies the operative dates and those dates place the claim outside the governing limitations period, dismissal is not premature; it is proper.

### FED. R. CIV. P. 9(B)

Where a claim sounds in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement. The Rule provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In practice, this means the pleader must allege the "who, what, when, where, and how" of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct charged. See *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Allegations that lump multiple defendants together, fail to identify the specific speaker, fail to identify the specific misrepresentation, or fail to identify when and how the statement was false do not satisfy Rule 9(b). *Id.*

### LOCAL RULE 9.1

In addition to the Federal Rules, Local Rule 9.1 of the Southern District of Georgia imposes a specific pleading requirement for claims brought under the Truth in Lending Act, Regulation Z, RICO, and "other similar statutes." S.D. Ga. L.R. 9.1. The Rule requires that such pleadings "specifically state each alleged violation." *Id.* If the pleading does not do so, then, upon motion,

"such pleading shall be dismissed without prejudice," subject to a fourteen-day opportunity to amend or show cause. *Id.* The Rule further provides that the movant need only point out the noncompliance and need not file a separate supporting brief on that issue. *Id.* In RICO actions, the claimant must also file a separate RICO statement summarizing the basis of the claim. *Id.* Thus, where a complaint invokes TILA, Regulation Z, RICO, or a similar statutory scheme, generalized accusations and collective allegations are insufficient. The complaint must identify each discrete statutory or regulatory violation allegedly committed by the particular defendant.

## ARGUMENT

### I.    PLAINTIFF'S GROUP PLEADING LEAVES EVERYONE GUESSING

The FAC repeatedly pleads by collective accusation rather than by defendant-specific facts. The Eleventh Circuit condemns complaints that assert claims against multiple defendants without making clear which defendant is alleged to have done what. See *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). That defect is abundantly present here. Counts I, II, V, VIII, IX, and X are directed broadly to "Defendants" or "All Defendants," and even the statutory counts that name Barrett often rely on allegations aimed at other actors in the transaction rather than conduct specifically attributed to Barrett. See (Doc. 29, ¶¶ 70-77, 78, 81, 83-100.)

A complaint does not state a plausible claim against a particular defendant when it requires the Court and the parties to rummage through a pile of collective allegations and infer which facts supposedly support which count against which party. See *Weiland*, 792 F.3d at 1323. Pleading is not a shell game, and Rule 8 does not permit a plaintiff to dump a basket of accusations at the courthouse door and leave the Court to sort the fish. This defect independently supports dismissal of the claims against Barrett, or at minimum a more definite repleading directed to Barrett's own alleged conduct.

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## II.   PLAINTIFF'S FRAUD-BASED ALLEGATIONS FAIL UNDER RULE 9(B)

To the extent Plaintiff asserts claims or theories against Barrett Financial Group LLC that sound in fraud, those allegations must satisfy Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In the Eleventh Circuit, that means the complaint must identify the "precise statements, documents, or misrepresentations made," "the time and place of and person responsible for the statement," "the content and manner in which these statements misled the plaintiff," and "what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1371 (11th Cir. 1997), *quoted in Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001). Stated more simply, the complaint must plead the who, what, when, where, and how of the alleged fraud. See *Brooks*, 116 F.3d at 1371. Fraud must be pleaded with a rifle shot, not a blunderbuss. Plaintiff's FAC does not do so as to Barrett.

### A.   Count I Fails to Plead Fraud, Fraudulent Inducement, or Fraudulent Concealment Against Barrett with Particularity

Count I is styled as a claim for "Fraud, Fraudulent Inducement, and Concealment" against "All Defendants Including Mr. Cooper/Nationstar, UWM, Lakeview." (Doc. 29, ¶¶ 70-74.) The claim is plainly fraud-based and therefore must satisfy Rule 9(b). See Fed. R. Civ. P. 9(b); *Brooks*, 116 F.3d at 1371.

It does not. Plaintiff alleges generally that "[d]efendants, individually and in concert," engaged in a coordinated scheme involving falsified underwriting data, lender misidentification, concealment of property defects, unauthorized electronic signatures, and withheld documents. (Doc. 29, ¶ 3). Plaintiff further alleges that "[d]efendants made material misrepresentations and omitted material facts" regarding the condition of the property, the identity of the lender-creditor,

the appraisal, and the existence of amendments. *Id.* ¶ 71. But Count I does not identify, as to Barrett, the specific false statement or omission Barrett itself made, the specific Barrett representative who made it, the date on which it was made, the place or document in which it was made, the precise reason it was false when made, or how Plaintiff relied on that specific statement to her detriment. Those omissions are fatal under Rule 9(b). See *Brooks*, 116 F.3d at 1371; *Ziemba*, 256 F.3d at 1202.

At most, the pleading alleges that Barrett was identified as "Lender" in certain closing documents, that Thornton-Lewis issued a pre-approval letter on Barrett letterhead, and that Barrett later responded inadequately to requests for records. (Doc. 29, ¶¶ 20-21, 35, 52-54, 65-66.) But those allegations still do not plead fraud with particularity. The FAC does not identify the exact language in any specific document that was fraudulent rather than merely disputed, does not plead facts showing Barrett knew the statement was false when made, and does not allege with the specificity Rule 9(b) requires how any particular Barrett statement fraudulently induced Plaintiff to enter the transaction. See Fed. R. Civ. P. 9(b); *Brooks*, 116 F.3d at 1371. A disagreement about labels in a closing file is not, by verbal inflation alone, transformed into common-law fraud. Count I should therefore be dismissed as to Barrett.

**B.     The FAC Does Not Plead Any Fraudulent Underwriting Theory Against Barrett with Particularity**

Plaintiff alleges that Defendants "falsified and inflated Plaintiff's income and underwriting data to manufacture loan eligibility," (Doc. 29, ¶ 3(a).) and further alleges that "substantial questions" exist regarding "how Plaintiff was qualified and whether income or underwriting inputs were falsified or inflated." *Id.* ¶ 36. Those are serious accusations, but Rule 9(b) requires factual particularity, not suspicion or conjecture.

The FAC does not identify what specific income figure was false, what underwriting datum was altered, what document contained the false information, who at Barrett supposedly entered or transmitted it, when that occurred, or how the figure was fraudulent as opposed to erroneous or incomplete. Nor does the FAC identify the specific manner in which Barrett supposedly procured approval through a fraudulent underwriting submission. An allegation that "substantial questions" exist is not a particularized fraud allegation. See *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Because Plaintiff does not plead the who, what, when, where, and how of any fraudulent underwriting act attributable to Barrett, any fraud-based underwriting theory should be dismissed under Rule 9(b). See *Brooks*, 116 F.3d at 1371.

### C.    The FAC Does Not Plead Any Document-Alteration or Signature-Fraud Theory Against Barrett with Particularity

Plaintiff alleges that Kathryn Nix French amended the contract, applied Plaintiff's electronic signature without consent, and created competing versions of the file. (Doc. 29, ¶¶ 48-51.) But none of that is tied to Barrett at all, let alone with the particularity Rule 9(b) requires. The FAC does not allege that Barrett altered the contract, affixed the signature, sent the altered version, directed anyone else to do so, or knowingly used a falsified document. Indeed, Plaintiff attributes the amendment and signature misuse to other transaction participants, not Barrett. *Id*. ¶ 49. Rule 9(b) does not permit fraud by association. See *Brooks*, 116 F.3d at 1371; *Ziemba*, 256 F.3d at 1202. Because the FAC identifies no Barrett actor, document, date, transmission, or act of fraud connected to the alleged alteration or signature misuse, any such theory fails as to Barrett.

### D.    To the Extent Count IV Relies on Fraud-Based TILA Allegations, Those Allegations Also Fail Under Rule 9(b)

Count IV alleges that Barrett, UWM, and Thornton-Lewis violated TILA by misstating the creditor, using inaccurate underwriting information, and providing incomplete disclosures. (Doc.

29, ¶ 81.) If that theory is fraud in a statutory coat, Rule 9(b) still governs. See *Mizzaro*, 544 F.3d at 1237; *ECB USA*, 91 F.4th at 1314-15.

But the FAC never gets there. It does not identify the specific disclosure duty Barrett breached, the precise statement that was false, the Barrett representative who made it, or facts showing the statement was knowingly false when made. (Doc. 29, ¶¶ 52-54, 81.) Saying Barrett was listed as "Lender" on certain documents is not, without more, a pleaded fraud claim. To the extent Count IV depends on fraud, it should be dismissed as to Barrett under Rule 9(b), apart from the other defects discussed below.

### E.    The RICO Predicate Allegations Fail to Plead Mail Fraud or Wire Fraud Against Barrett with Particularity

Count VIII asserts a RICO claim under 18 U.S.C. § 1962(c) and (d) based on alleged acts of mail and wire fraud. (Doc. 29, ¶¶ 90-94.) When a RICO claim rests on fraud predicates, Rule 9(b) applies with full force. See *Ambrosia Coal*, 482 F.3d at 1316-17; *Liquidation Comm'n*, 530 F.3d at 1355.

The FAC does not meet that standard as to Barrett. Plaintiff points to overlapping e-signature platforms, altered contract versions, an August 20, 2025 email, alleged false statements to regulators, and documents identifying Barrett as lender. (Doc. 29, ¶ 91.) But the pleading never identifies what mailing or wire Barrett sent, when it sent it, to whom, what the statement said, why it was false, or how it furthered a fraudulent scheme. That is not particularity. It is accusation by accumulation. See *Ambrosia Coal*, 482 F.3d at 1316-17; *Brooks*, 116 F.3d at 1371. Because collective allegations against "Defendants" cannot substitute for defendant-specific fraud pleading, the alleged mail- and wire-fraud predicates fail as to Barrett and Count VIII should be dismissed on that ground.

**F.      Later Communications Attributed to Barrett Do Not Cure the Rule 9(b) Defect**

Plaintiff also alleges that Barrett's compliance manager later said Thornton-Lewis no longer worked for Barrett and had been "part of a team" on Plaintiff's loan. (Doc. 29, ¶ 66.) Even if inaccurate, those statements do not amount to pleaded fraud. The FAC does not say with clarity when or in what setting they were made, does not allege facts showing the speaker knew they were false, and does not allege reliance on them in entering the original transaction. See *Brooks*, 116 F.3d at 1371. Those later statements cannot revive Count I, any fraud-based portion of Count IV, or Count VIII.

For those reasons, Plaintiff's fraud-based allegations against Barrett fail under Rule 9(b). Count I should be dismissed as to Barrett. Any fraud-based TILA theory in Count IV should be dismissed as well. And because the alleged RICO predicates of mail and wire fraud are not pleaded with particularity as to Barrett, Count VIII should also be dismissed.

**III.    COUNT II FAILS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION OR NEGLIGENCE AGAINST BARRETT**

Count II is styled as a claim for "Negligent Misrepresentation / Negligence" against "All Defendants." (Doc. 29, ¶¶ 75-77.) As pleaded, it fails as to Barrett because it identifies no cognizable duty, no specific false information supplied by Barrett, no justifiable reliance, and no plausible proximate causation.

Under Georgia law, negligent misrepresentation requires, among other things, that the defendant negligently supply false information to foreseeable persons, that the plaintiff reasonably rely on it, and that economic injury proximately result. See *Hardaway Co.,* 267 Ga. at 426; *Next Century Commc'ns*, 318 F.3d at 1030. But Count II identifies no particular false statement Barrett supplied to Plaintiff, beyond the same generalized allegations elsewhere in the FAC concerning

lender identity, underwriting, and appraisal-related matters. See (Doc. 29, ¶¶ 20, 34-35, 45, 52-54, 75-77.) Nor does it allege facts showing that Plaintiff took any specific action in justifiable reliance on a particular Barrett representation.

To the extent Count II sounds in ordinary negligence, it fares no better. The FAC alleges that Barrett acted as a mortgage broker in connection with loan origination. *Id*. ¶ 20. It does not allege that Barrett owned the property, performed the inspection, conducted the appraisal, handled the closing, or serviced the loan after transfer. See *id*. ¶¶ 17-19, 24-28, 54. On those facts, the pleading does not plausibly show that Barrett owed Plaintiff a tort duty as to the property's condition, the inspection, the appraisal's substantive conclusions, or later servicing conduct.

Causation is likewise missing. Plaintiff's alleged injuries stem chiefly from the condition of the property, alleged nondisclosure of defects, contract alterations, closing irregularities, and later servicing or collection conduct by others. See, e.g., *id*. ¶¶ 41-51, 55-69, 101-107. The FAC does not plausibly allege how any negligent act by Barrett, as distinct from the conduct of other participants, proximately caused those injuries. Count II should therefore be dismissed as to Barrett.

## IV.    <u>COUNT IV FAILS TO STATE A TILA CLAIM AGAINST BARRETT</u>

Count IV is also untimely to the extent Plaintiff seeks TILA damages. TILA requires that damages actions be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Plaintiff alleges that the loan closed "on or about January 9, 2024." (Doc. 29, ¶ 2.) This action was commenced on September 2, 2025, and the FAC asserting Count IV was filed on March 18, 2026. Any TILA damages theory aimed at origination disclosures is therefore outside the one-year limitations period even measured from the original complaint. 15 U.S.C. § 1640(e).

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Nor does rescission save Count IV. Plaintiff expressly seeks "rescission where applicable," (Doc. 29, ¶ 82.) but TILA's rescission remedy does not apply to "a residential mortgage transaction," 15 U.S.C. § 1635(e)(1). Plaintiff's own pleading alleges that this case arises from a VA-backed purchase-money mortgage used to acquire the Property at 115 Carolyn Street, Sardis, Georgia, and that the transaction closed on January 9, 2024. (Doc. 29, ¶¶ 2, 35, 88.) On the face of the FAC, then, this was a residential mortgage transaction used to finance the acquisition of the dwelling, and the statutory right of rescission is unavailable as a matter of law. 15 U.S.C. § 1635(e)(1).  For all of those reasons, Count IV fails to state a claim against Barrett and should be dismissed.

## V.    COUNT III FAILS TO STATE A RESPA CLAIM AGAINST BARRETT

Count III asserts a RESPA claim against Barrett, UWM, Thornton-Lewis, Schroder, Mr. Cooper, and Lakeview. (Doc. 29, ¶¶ 78-80, .). But as pleaded, the RESPA count improperly combines distinct statutory theories, fails to allege facts satisfying the elements of any viable RESPA claim against Barrett, and is untimely to the extent it is based on origination-stage referral or kickback allegations.

RESPA authorizes private civil actions for violations of 12 U.S.C. §§ 2605, 2607, and 2608. 12 U.S.C. § 2614. Section 2605 addresses servicing obligations; § 2607 addresses kickbacks and unearned fees in connection with settlement services; and § 2608 addresses required use of a particular title insurer. *Id.* Plaintiff's Count III appears to invoke at least two different theories: first, an alleged undisclosed referral relationship or kickback arrangement between Schroder and Thornton-Lewis, and second, alleged servicing misconduct by Mr. Cooper and Lakeview in responding to "qualified written requests and fraud disputes." (Doc. 29, ¶ 78.) But Count III does not plausibly connect Barrett to either theory in a manner sufficient to state a claim.

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

To the extent Count III is based on § 2607, the pleading remains wholly conclusory. Section 2607 prohibits giving or accepting "any fee, kickback, or thing of value" pursuant to an agreement or understanding that business incident to a real estate settlement service shall be referred. 12 U.S.C. § 2607(a). But the FAC alleges only that Schroder had a close personal friendship with Thornton-Lewis, that Schroder steered Plaintiff to Barrett, and that this "constitutes an undisclosed referral relationship creating a conflict of interest in violation of RESPA's anti-kickback provisions." (Doc. 29, ¶ 34.) The FAC does not allege facts showing any agreement to exchange a fee or thing of value, does not identify any payment, kickback, split, or transferred benefit, and does not identify when or how Barrett supposedly gave or received such a prohibited thing of value. A personal relationship and a referral, without factual allegations of a prohibited payment or thing of value, do not plausibly state a § 2607 claim. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

To the extent Count III relies on § 2605 servicing allegations, it fails as to Barrett for a separate reason: Plaintiff's own pleading does not identify Barrett as the servicer during the period in which the alleged servicing misconduct occurred. Plaintiff alleges that Barrett was a mortgage broker involved in origination, that UWM later transferred servicing, and that Mr. Cooper began servicing the loan effective August 2, 2024, as sub servicer for Lakeview. (Doc. 29, ¶¶ 20-21, 24-26, 54, 78.) Plaintiff's servicing-related allegations themselves are directed at "Mr. Cooper and Lakeview," not Barrett. *Id.* ¶ 78(c). Thus, even on Plaintiff's own theory of the case, the alleged failures to respond to qualified written requests and servicing disputes are not alleged against Barrett. Count III therefore fails to state a § 2605 claim against Barrett.

The RESPA count is also time-barred to the extent it rests on origination-stage referral or disclosure theories. Section 2614 requires actions alleging violations of § 2607 or § 2608 to be

brought "within 1 year . . . from the date of the occurrence of the violation," while allowing three years for § 2605 claims. 12 U.S.C. § 2614. Plaintiff alleges that the transaction closed on January 9, 2024. (Doc. 29, ¶ 2.) This action was commenced on September 2, 2025, and the FAC was filed on March 18, 2026. Any § 2607 or § 2608 claim based on origination conduct was therefore brought too late even under the original complaint date. Because Count III lumps origination and servicing theories together, it independently fails to state a plausible, timely RESPA claim against Barrett.

That defect is not marginal. Plaintiff's own allegations place Barrett's supposedly wrongful origination conduct in December 2023 and January 2024—the pre-approval letter, the alleged referral arrangement, the appraisal-ordering conduct, and the closing documents identifying Barrett as lender. (Doc. 29, ¶¶ 34-35, 45, 52-54.) By the time Plaintiff filed suit on September 2, 2025, § 2614's one-year window for any § 2607 or § 2608 theory had already closed. Only a properly pleaded § 2605 servicing claim could reach farther, and Plaintiff's own allegations direct the servicing misconduct to Mr. Cooper and Lakeview, not Barrett. What remains, as to Barrett, is at best smoke after the fire has gone out. For those reasons, Count III should be dismissed as to Barrett.

## VI.    COUNT VIII FAILS TO STATE A CIVIL RICO CLAIM AGAINST BARRETT

Count VIII asserts a civil RICO claim under 18 U.S.C. § 1962(c) and (d) against "All Defendants." (Doc. 29, ¶¶ 90-94.) The claim fails under Rule 12(b)(6) because the FAC does not plausibly plead a qualifying enterprise, does not plausibly plead Barrett's participation in the conduct of that enterprise's affairs through a pattern of racketeering activity, does not plausibly plead proximate causation, and does not plausibly plead a conspiracy claim under § 1962(d).

Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise engaged in interstate commerce to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1962(d) prohibits conspiracies to violate § 1962(c). 18 U.S.C. § 1962(d). A civil RICO plaintiff must plead, among other things, the existence of an enterprise, a pattern of racketeering activity, and injury proximately caused by the alleged RICO violation. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348-49 (11th Cir. 2016). The Eleventh Circuit has affirmed dismissal where the complaint failed adequately to plead the existence of an enterprise and proximate cause. *Id.* at 1350-52.

Here, Plaintiff alleges in conclusory fashion that an "enterprise existed among Defendants and/or associated persons-in-fact," and that Defendants engaged in predicate acts of mail and wire fraud through document transmissions, electronic signature platforms, a multi-party email, and alleged false statements to regulators. (Doc. 29, ¶¶ 90-93.) But the FAC never plausibly defines the alleged enterprise as something distinct from the ordinary set of actors who participated in this single real estate and mortgage transaction. Nor does it allege facts showing that Barrett directed or participated in the conduct of the affairs of an enterprise, as opposed to merely participating in its own alleged business activities connected to the loan transaction. See 18 U.S.C. § 1962(c). Instead, Plaintiff merely aggregates all transaction participants and labels them an enterprise. That is not enough under *Twombly* and *Iqbal*. See *Ray*, 836 F.3d at 1350-51. RICO is not a decorative label to be pinned onto every soured real-estate closing, and a single creek of communications does not become a criminal river merely because counsel calls it one.

The FAC also fails plausibly to plead a "pattern of racketeering activity" as to Barrett. A pattern requires at least two related predicate acts that amount to or pose a threat of continued

criminal activity, and where the alleged predicates are mail fraud or wire fraud, those allegations must be pleaded with particularity. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290-91 (11th Cir. 2010); *Ambrosia Coal*, 482 F.3d at 1316-17. Plaintiff's RICO count instead relies on a single residential transaction and a later series of communications arising from disputes about that transaction. (Doc. 29, ¶ 91.) On the face of the FAC, this is a single, closed-ended dispute over one home purchase and mortgage, not a plausibly pleaded pattern of racketeering activity by Barrett. And as explained above, the alleged mail-fraud and wire-fraud predicates are not pleaded with the particularity Rule 9(b) requires.

Proximate cause is missing as well. A civil RICO plaintiff must plausibly allege that the RICO violation proximately caused injury to business or property. 18 U.S.C. § 1964(c); *Ray*, 836 F.3d at 1350. Plaintiff alleges injuries including financial loss, repair costs, credit harm, emotional distress, and property-related losses. (Doc. 29, ¶¶ 94, 101-107.) But the FAC does not plausibly connect those alleged injuries to a racketeering injury caused by Barrett's conduct through an enterprise, as opposed to the more direct causes alleged elsewhere in the pleading, such as the condition of the property, alleged inspection failures, appraisal issues, alleged closing irregularities, or later servicing conduct by other defendants. The chain of causation pleaded is too diffuse and attenuated to state a civil RICO claim against Barrett. See *Ray*, 836 F.3d at 1350-52.

The § 1962(d) conspiracy theory fails for the same reason. To state a RICO conspiracy claim, Plaintiff must plausibly allege that Barrett objectively manifested an agreement to participate in the affairs of the alleged enterprise through the commission of at least two predicate acts. *Am. Dental*, 605 F.3d at 1293-94. The FAC does not plausibly allege such an agreement by Barrett. It alleges, in essence, that several participants in a real estate transaction communicated with one another and later responded to complaints. (Doc. 29, ¶¶ 64, 90-93.) That does not

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

plausibly plead an agreement to conduct the affairs of an enterprise through a pattern of racketeering activity. See *Am. Dental*, 605 F.3d at 1293-94.

For all of those reasons, Count VIII fails to state a civil RICO claim against Barrett and should be dismissed.

## VII.    PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO COMPLY WITH LOCAL RULE 9.1

Local Rule 9.1 requires that all pleadings alleging violations of the Truth in Lending Act, Regulation Z, RICO, and other similar statutes "specifically state each alleged violation." S.D. Ga. L.R. 9.1. The Rule further provides that, if a pleading fails to comply, then, upon motion, "such pleading shall be dismissed without prejudice," subject to a fourteen-day opportunity to amend or respond. *Id*. The Rule also makes clear that the movant need not file a supporting brief on the issue and that it is sufficient to point out the noncompliance. Id. In addition, in all actions asserting a RICO claim, the claimant "must, upon filing, or within fourteen (14) days of removal or transfer, also file a RICO statement summarizing the basis of the claim." *Id*.

Plaintiff's FAC does not satisfy Local Rule 9.1 as to the statutory claims asserted against Barrett Financial Group LLC. In Count IV, Plaintiff alleges that "Defendants violated TILA" by "failing to accurately identify the actual creditor in the required disclosures," by "using inaccurate underwriting inputs and documentation," and by "failing to provide complete and accurate material loan disclosures required by TILA and Regulation Z." (Doc. 29, ¶ 81.) In Count VIII, Plaintiff alleges that "All Defendants" violated RICO, 18 U.S.C. § 1962(c), (d), through an alleged enterprise and a pattern of racketeering activity consisting of purported mail and wire fraud. *Id*. ¶¶ 90-94. But the pleading does not specifically state each alleged violation as Local Rule 9.1 requires. S.D. Ga. L.R. 9.1.

As to TILA and Regulation Z, Plaintiff alleges that certain documents identified Barrett as "Lender" while UWM was the "actual underwriter and funding lender." (Doc. 29, ¶¶ 52-54.) Plaintiff then concludes that Defendants violated TILA and Regulation Z by inaccurately identifying the creditor and providing incomplete disclosures. Id. ¶ 81. The FAC does not identify the specific TILA subsection or Regulation Z provision Barrett violated, the disclosure duty Barrett breached, what information was false as to Barrett, or how Barrett's conduct satisfies a private claim under any particular provision. See S.D. Ga. L.R. 9.1. A statutory label is not a specifically stated violation.

The same defect defeats the RICO claim. Plaintiff references an enterprise, mail and wire fraud, e-signature platforms, allegedly altered documents, a multi-party email, and supposed false statements to regulators. (Doc. 29, ¶¶ 90-93.) But the FAC does not identify, as to Barrett, which communication was which predicate act, when it occurred, who made it, who received it, what was false, why it was fraudulent, or how Barrett's conduct satisfied § 1962(c) or (d). See id. ¶¶ 90-94. Plaintiff leaves Barrett and the Court to infer liability from collective allegations—precisely what Local Rule 9.1 forbids. Plaintiff also failed to file the separate RICO statement required by the Rule. S.D. Ga. L.R. 9.1.

Plaintiff's repeated reliance on group pleading further underscores the Rule 9.1 defect. In Count III, Plaintiff alleges that "Defendants violated RESPA." (Doc. 29, ¶ 78.) In Count IV, Plaintiff alleges that "Defendants violated TILA." Id. ¶ 81. In Count VIII, Plaintiff alleges that "Defendants engaged in predicate acts of wire fraud and mail fraud." Id. ¶ 91. But Local Rule 9.1 does not permit a plaintiff to proceed under complex statutory schemes such as TILA, Regulation Z, and RICO through undifferentiated allegations against all defendants collectively. See S.D. Ga. L.R. 9.1. By its plain terms, the Rule requires the pleader to "specifically state each alleged

violation," which necessarily requires identification of the particular violation, the defendant to whom it is attributed, and the conduct allegedly constituting that violation. *Id.* Plaintiff's FAC does not do so as to Barrett.

This is not technical fussing. Local Rule 9.1 exists so that statutory claims identify the exact duty allegedly breached and neither the defendant nor the Court must guess at the theory. Plaintiff's TILA theory rests on broad allegations about creditor identity and disclosures; the RICO theory rests on sweeping allegations of coordinated misconduct and unspecified fraud acts. (Doc. 29, ¶¶ 52-54, 81, 90-94.) Complex statutory claims should come to court with bones, not vapor.

Accordingly, Plaintiff's statutory claims against Barrett that fall within Local Rule 9.1, including at least the TILA, Regulation Z, and RICO theories pleaded in the FAC, should be dismissed for failure to comply with Local Rule 9.1. At a minimum, those claims should be dismissed without prejudice as the Rule expressly provides, with Plaintiff required to amend to specifically state each alleged violation and, as to the RICO claim, to file the separate RICO statement required by the Local Rules. S.D. Ga. L.R. 9.1.

## VIII.  <u>COUNT V FAILS TO STATE A FAIR HOUSING ACT CLAIM AGAINST BARRETT</u>

Count V asserts a Fair Housing Act claim against all defendants. (Doc. 29, ¶¶ 83-85.) The count fails as to Barrett because it does not identify the specific FHA provision allegedly violated, does not plausibly plead intentional discrimination, disparate impact, refusal to accommodate, or interference, and does not allege any adverse action by Barrett taken because of Plaintiff's disability. The FHA prohibits discrimination in housing-related transactions because of handicap, including certain refusals to make reasonable accommodations and certain coercion, intimidation, threats, or interference with the exercise of protected rights. See 42 U.S.C. §§ 3604(f), 3617. A

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

reasonable-accommodation claim requires, among other things, that the plaintiff request an accommodation necessary to afford equal opportunity to use and enjoy the dwelling and that the defendant refuse that request. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

Here, Plaintiff alleges in conclusory fashion that Defendants discriminated against her on the basis of disability, failed to accommodate disability-related limitations, and exploited her PTSD-related vulnerabilities. (Doc. 29, ¶¶ 83-84.) But the FAC does not allege that Plaintiff requested a specific accommodation from Barrett, that Barrett denied any such request, that Barrett adopted a policy with a discriminatory effect, or that Barrett coerced, intimidated, threatened, or interfered with Plaintiff on account of her disability within the meaning of 42 U.S.C. § 3617. Nor does the FAC plead facts supporting an inference that any Barrett conduct occurred because of Plaintiff's disability rather than as part of the ordinary origination process Plaintiff challenges more generally. Absent facts showing disability-based discrimination or interference by Barrett, Count V fails to state an FHA claim against Barrett and should be dismissed.

## IX.    COUNT VI FAILS TO STATE A CLAIM UNDER THE ADA OR REHABILITATION ACT AGAINST BARRETT

Count VI tries to carry two statutes in one thin paragraph and drops both. Styled as an "ADA and/or Rehabilitation Act" claim, it never says which title of the ADA Barrett supposedly violated, never pleads the elements of any ADA claim, and never alleges that Barrett falls within the Rehabilitation Act at all. Labels may start a lawsuit, but they do not keep one alive.

Title III concerns discrimination in the full and equal enjoyment of a place of public accommodation, 42 U.S.C. § 12182(a), and a private plaintiff may seek only injunctive relief, 42 U.S.C. § 12188(a). The Rehabilitation Act reaches programs receiving federal financial assistance

and requires exclusion, denial of benefits, or discrimination solely by reason of disability. 29 U.S.C. § 794(a).

The FAC pleads none of this against Barrett. It identifies no Barrett public accommodation, no denied access, no removable barrier, no disability-based denial of services, and no real and immediate threat of future injury to support prospective ADA relief. Nor does it allege that Barrett receives federal financial assistance or excluded Plaintiff from any covered program solely because of disability. Instead, Count VI offers only the broad charge that Defendants denied meaningful access and failed to accommodate disability-related limitations. (Doc. 29, ¶ 86.) That is smoke without firewood. Under Rule 12(b)(6), Count VI should be dismissed as to Barrett.

## X.    COUNT VII FAILS TO STATE A CLAIM FOR "VA LOAN FRAUD / FEDERAL REGULATORY VIOLATIONS" AGAINST BARRETT

Count VII asserts a claim styled as "VA Loan Fraud / Federal Regulatory Violations" against Barrett, Thornton-Lewis, UWM, and Hardy. (Doc. 29, ¶¶ 88-89.) As pleaded, the count fails because it cites regulations and generalized compliance obligations but does not identify an express private cause of action authorizing Plaintiff to sue Barrett for alleged noncompliance with VA regulations or related federal loan-program requirements. Federal regulations do not create a private right of action absent a statute showing congressional intent to create one. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). And courts have rejected attempts by borrowers to enforce VA publications and comparable federal lending requirements absent such a statutory right. See *Bright v. Nimmo*, 756 F.2d 1513, 1516-17 (11th Cir. 1985).

Here, Count VII alleges that Defendants violated VA regulations by allowing origination by an unlicensed mortgage loan originator, submitting inaccurate underwriting data, interfering with appraisal independence, and misrepresenting facts in connection with the VA loan application

and closing. (Doc. 29, ¶ 88.) But Count VII does not identify a statute creating a private right of action for damages or rescission based on those alleged regulatory violations. To the extent Plaintiff seeks to repackage those allegations as fraud, TILA, RESPA, or RICO theories, those claims rise or fall under the elements of those separate counts and cannot be saved by relabeling them as a stand-alone "VA Loan Fraud" claim. Because Count VII does not identify a viable cause of action authorizing private enforcement against Barrett, it should be dismissed.

## XI.    <u>COUNT IX FAILS TO STATE A CIVIL CONSPIRACY CLAIM AGAINST BARRETT</u>

Count IX asserts civil conspiracy against all defendants. (Doc. 29, ¶¶ 95-97.) But under Georgia law, civil conspiracy is not a tort standing on its own two feet. It is derivative; it depends on an adequately pleaded underlying tort. See *Premier/Georgia Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. 430, 431-32, 529 S.E.2d 839 (2000). Where the underlying tort fails, the conspiracy claim falls with it. Id.

That rule disposes of Count IX as to Barrett. As explained above, the FAC fails to state a viable fraud-based, negligence-based, statutory, or racketeering claim against Barrett. The conspiracy count therefore has no foundation. It is all roof and no walls.

Count IX also fails on its own terms. The FAC does not allege facts showing that Barrett agreed with anyone to accomplish an unlawful objective or commit a tort. Instead, it alleges in collective strokes that "Defendants" agreed to originate the loan, conceal defects, falsify underwriting data, misrepresent lender identity, alter documents, and withhold files. (Doc. 29, ¶ 95.) That is accusation by herd. It does not plead who at Barrett agreed, with whom, when, to what, or how Barrett joined the alleged scheme.

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Nor does the August 20, 2025, email rescue the claim. At most, Plaintiff alleges that various transaction participants were copied on a communication after disputes had arisen. See *id*. ¶ 96. Being copied on an email is not a handshake in a back room. It is not an agreement to commit a tort. And it does not plausibly transform Barrett's limited alleged role in the transaction into membership in a civil conspiracy.

Count IX should therefore be dismissed as to Barrett.

## XII. COUNT X FAILS TO STATE A STAND-ALONE CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF AGAINST BARRETT

Count X seeks declaratory and injunctive relief concerning the enforceability of the loan instruments and an injunction against foreclosure or further collection. (Doc. 29, ¶¶ 98-100.) But declaratory and injunctive relief are remedies, not freestanding causes of action absent a viable underlying claim. See 28 U.S.C. § 2201(a); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Because Plaintiff has not adequately pleaded a substantive claim against Barrett, Count X cannot stand on its own against Barrett.

Count X also fails to allege that Barrett is threatening the prospective harm Plaintiff seeks to enjoin. The FAC alleges later servicing and collection by Mr. Cooper and Lakeview, while Barrett allegedly acted as a mortgage broker at origination. See Doc. 29, ¶¶ 20, 24-26, 54-66, 100. Declarations about loan validity or an injunction against future foreclosure or collection require facts showing Barrett is the proper defendant. The FAC pleads none. Count X should be dismissed as to Barrett.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Barrett Financial Group, LLC, with prejudice, or alternatively dismiss without prejudice only to the extent the Court

concludes amendment should be allowed. Several of Plaintiff's statutory theories are not merely underpled; they are out of time on the face of her own pleading, including her origination-based RESPA theories, her TILA damages theory, and her FHA and ADA/Rehabilitation Act theories to the extent they rest on the January 2024 transaction.

Plaintiff's FAC is long, but length is not substance. A complaint must do more than gesture at wrongdoing and trust volume to stand in for precision. As pleaded, the claims against Barrett rest on inference piled upon inference and labels piled upon law. The Federal Rules require firmer ground before a defendant is marched into costly litigation. The motion should be granted.

Dated: May 4, 2026.

By: /s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No.: 128007
Buchalter LLP
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Email: bgoldberg@buchalter.com

By: /s/ Roger A. Wright
Roger A. Wright
*(Pro Hac Vice Application Forthcoming)*
Arizona Bar No.: 014105
Wright Law Firm, PLC
4140 E. Baseline Road, Suite 101
Mesa, Arizona 85206
Telephone: (480) 558-1700
Email: office@wrightlawaz.com

*Attorneys for Barrett Financial Group*

DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 4, 2026, I electronically filed the foregoing Defendant Barrett Financial Group, LLC's Memorandum of Law in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record. I further certify that I served a true and correct copy on any party not receiving notice through CM/ECF by US Mail, postage prepaid, addressed as follows:

Nikki Harper
1529 Pinebrook Court, Apt A2
Greenville, NC 27858
*Plaintiff Pro Se*

DATED: May 4, 2026                    By: */s/ Brian S. Goldberg*
                                       *Attorneys for Defendant*
                                       *Barrett Financial Group, LLC*