IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

MAY 26 2026

FILED

NIKKI M. HARPER,
Plaintiff,

v.

BARRETT FINANCIAL GROUP, LLC, et al.,
Defendants.


Civil Action No. 1:25-cv-00203-JRH-BKE


PLAINTIFF'S OPPOSITION TO DEFENDANT BARRETT FINANCIAL GROUP, LLC'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT


Plaintiff Nikki M. Harper, proceeding pro se, respectfully files this Opposition to Defendant Barrett Financial Group, LLC's Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons stated below, Barrett's motion should be denied. In the alternative, if the Court finds any claim insufficiently pleaded, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

I. INTRODUCTION


Barrett asks this Court to treat it as a marginal participant in a transaction where its own documents, representatives, and post-closing responses place it inside the loan-origination chain. Barrett's argument is not that it had no connection to Plaintiff's VA loan. Barrett's argument is that its connection should not be legally actionable. That is a merits and discovery issue, not a proper basis for dismissal at this stage.

Plaintiff alleges that Barrett Financial Group, LLC, through Tina Thornton, handled Plaintiff's borrower-facing loan communications, issued a December 5, 2023 pre-approval letter on Barrett letterhead, represented the loan as a VA loan for a $160,000 purchase and $160,000 loan amount, communicated underwriting conditions, directed Plaintiff concerning documents, and participated in a transaction where Plaintiff was not clearly informed who the actual lender, underwriter, and decision-maker were.

Barrett's motion repeatedly argues that Plaintiff did not plead "who, what, when, where, and how." Plaintiff disagrees. The "who" includes Barrett Financial Group, LLC, acting through Tina Thornton during origination; Trevor Barrett, whose name appeared on Plaintiff's Closing Disclosure as Barrett's lender contact and who was involved in limited loan-related email communications concerning documents that needed to be signed; and Brian Morgan, who later responded on Barrett's behalf to Plaintiff's complaints and document demands. Plaintiff's direct communications were primarily with Tina Thornton. That point does not weaken the allegations against Barrett; it supports them because Thornton was acting as Barrett's borrower-facing representative.

The "what" includes misidentification and concealment of lender/underwriter responsibility, false or materially questionable underwriting and income information, confusing or misleading loan documents identifying Barrett as lender or servicer, failure to produce Plaintiff's complete loan file, appraisal-related issues connected to Barrett/VA documentation, and coordinated origination conduct that caused Plaintiff to proceed with a VA loan transaction she alleges was fraud-tainted.

The "when" includes November 15, 2023, when Plaintiff was denied by First Choice Mortgage for a $160,000 residential mortgage loan; December 5, 2023, when Barrett issued the $160,000 pre-approval letter; December 2023 through January 9, 2024, when Barrett/Thornton handled loan conditions, document requests, insurance coordination, underwriting-related communications, and closing preparation; January 8 and January 9, 2024, when loan and closing documents identified Barrett in lender/servicer roles; and the post-closing period when Plaintiff repeatedly demanded her loan file and Barrett responded through Brian Morgan.

The "where" includes Barrett communications, text messages, emails, the pre-approval letter, the Closing Disclosure, the Appraisal Disclaimer, the Borrower Property Condition Certificate, the Notice of Servicing Transfer, appraisal-related documents, and post-closing complaint responses.

The "how" is straightforward: Plaintiff alleges Barrett and its representatives created or participated in a borrower-facing loan process that made Barrett appear to be the lender-side authority while the actual underwriting/funding role was later attributed elsewhere; used documents that identified Barrett as lender or servicer while later disclaiming that role; relied on income and underwriting information Plaintiff alleges was false, inflated, or materially questionable; and failed to produce the complete loan file needed to clarify who did what.

At the motion-to-dismiss stage, Plaintiff is not required to prove the case. Plaintiff is required to plead enough factual matter to make the claims plausible and give Barrett fair notice. Plaintiff has done that.

## II. RELEVANT FACTUAL BACKGROUND

On November 15, 2023, First Choice Mortgage denied Plaintiff for a $160,000 residential mortgage loan. The denial identified excessive obligations, insufficient income, and/or excessive obligation in relation to income. This denial occurred shortly before Barrett's December 5, 2023 pre-approval for the same $160,000 purchase and loan amount.

On December 5, 2023, Tina Thornton issued Plaintiff a pre-approval letter on Barrett Financial Group letterhead. The letter identified the loan program as VA, listed a purchase price of $160,000, listed a loan amount of $160,000, stated $0.00 down payment, and identified a 30-year term. The letter was signed by Tina Thornton, NMLS #1248462, Mortgage Advisor, Barrett Financial Group, L.L.C. The letter instructed Plaintiff to contact Tina with questions.

During origination, Plaintiff's communications were with Tina Thornton. Thornton requested documents, discussed underwriting conditions, told Plaintiff the loan was "with my underwriter," discussed payment questions, communicated about insurance, and handled loan-process matters. Plaintiff reasonably believed Barrett/Tina was the lender-side authority because Barrett and Thornton were the persons communicating with her.

Plaintiff did not receive clear borrower-facing disclosure explaining that Barrett was merely a broker and that another entity controlled underwriting and approval. Barrett now argues that the loan was reviewed and approved independently by the lender's underwriting department. That assertion does not defeat Plaintiff's claims. It supports Plaintiff's misidentification and nondisclosure theory because Plaintiff was not clearly told during origination that a separate lender or underwriter controlled approval.

Plaintiff alleges that income and underwriting information was false, inflated, or materially questionable. Plaintiff has identified income-calculation documents connected to the loan file, including documents reflecting underwriter Nikita Singh and loan number 702473679. Plaintiff alleges the income figures and underwriting treatment did not accurately reflect her actual financial condition, including her reliance on VA disability income and payday loan activity. Plaintiff is not required at this stage to prove every internal underwriting entry before discovery, particularly where Barrett has not produced the complete loan file.

Trevor Barrett appears on Plaintiff's Closing Disclosure as Barrett's lender contact. Plaintiff also received limited loan-related email communications involving Trevor Barrett and/or Chris concerning documents that needed to be signed. Plaintiff does not allege that Trevor Barrett was her day-to-day contact. Plaintiff alleges his appearance on the Closing Disclosure and related communications show Barrett's management-level presence in the loan-document chain.

Certain loan and closing documents identified Barrett as "Lender" or "Current Servicer," including the Closing Disclosure, Appraisal Disclaimer, Borrower Property Condition Certificate, and Notice of Servicing Transfer. Plaintiff alleges this was materially confusing and misleading because Barrett now denies being the actual lender, underwriter, or funder.

Plaintiff also alleges appraisal-related documents connect Barrett to the VA appraisal process. Plaintiff has identified appraisal-related documentation reflecting Barrett/VA involvement. Plaintiff alleges the appraisal process, the appraisal value, and the loan conditions were used to move the loan toward closing while obscuring responsibility for property condition, value, and VA-related requirements.

After closing, Plaintiff repeatedly requested her complete loan file and related documentation from Barrett. Plaintiff sent repeated requests, emails, complaints, and certified mail. Barrett responded through Brian Morgan, Compliance Manager, stating in substance that all documentation relevant to the loan had been provided and that Barrett considered its obligations satisfied. Plaintiff alleges this statement was false or incomplete because Barrett still has not produced the complete loan file, including the documents Barrett collected, transmitted, received, or submitted to the lender/underwriter and VA-related loan file.

Tina Thornton is a named Defendant. The Court granted Thornton an extension through June 4, 2026, to answer, move, or otherwise respond to Plaintiff's First Amended Complaint. Thornton's role is central because Plaintiff alleges Thornton acted as Barrett's borrower-facing mortgage representative during the origination process.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. At this stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor.

Fraud-based allegations must satisfy Rule 9(b), but Rule 9(b) does not require a plaintiff to prove the fraud before discovery. A plaintiff must plead the circumstances with enough particularity to place the defendant on notice of the alleged misconduct. Plaintiff's allegations identify the relevant people, documents, dates, roles, communications, and misconduct sufficiently to give Barrett fair notice.

Plaintiff is proceeding pro se. Pro se pleadings are liberally construed. If the Court determines that any claim requires additional detail, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

## IV. ARGUMENT

### A. Barrett is not merely peripheral.

Barrett argues that Plaintiff's allegations place Barrett at the edge of the dispute. The documents and facts say otherwise. Barrett issued the December 5, 2023 pre-approval letter. Barrett's representative Tina Thornton handled Plaintiff's borrower-facing communications. Barrett appeared on loan and closing documents. Trevor Barrett appeared on the Closing Disclosure as

Barrett's lender contact. Barrett later responded through Brian Morgan to Plaintiff's complaints and records requests.

Those allegations plausibly place Barrett in the origination chain. Barrett may dispute whether its role creates liability, but that is not a basis for dismissal at the pleading stage.

B. Plaintiff does not rely only on group pleading.

Barrett argues that Plaintiff improperly lumps defendants together. Plaintiff alleges coordinated conduct because the transaction involved multiple parties, but Plaintiff also identifies Barrett-specific conduct.

Plaintiff identifies Barrett's December 5, 2023 pre-approval letter; Tina Thornton's role as Barrett's mortgage advisor; Barrett's appearance on loan documents; Trevor Barrett's appearance on the Closing Disclosure; Barrett-related emails concerning documents; Barrett's involvement in appraisal and loan-document communications; and Brian Morgan's post-closing responses.

Those allegations do not leave Barrett guessing. They identify Barrett's role and conduct with sufficient specificity for Rule 12(b)(6).

C. Plaintiff pleads fraud, fraudulent inducement, and concealment with sufficient particularity.

Barrett argues Count I fails under Rule 9(b). Plaintiff alleges specific facts: Barrett, through Tina Thornton, issued a pre-approval for a $160,000 VA loan shortly after Plaintiff had been denied for a similar amount by First Choice Mortgage; Thornton handled underwriting communications and told Plaintiff the matter was with "my underwriter"; Barrett documents later identified Barrett as lender or servicer; Plaintiff was not clearly informed that another entity controlled underwriting and approval; and Barrett failed to produce the complete loan file after repeated demands.

The alleged fraud and concealment concern lender identity, underwriting responsibility, income and eligibility information, loan-document accuracy, appraisal-related responsibility, and the withholding of records. Plaintiff alleges she relied on the Barrett/Thornton loan process by continuing the transaction, signing documents, obtaining insurance, gathering closing funds, and attending closing.

This satisfies Rule 9(b) or, at minimum, warrants leave to amend with additional detail after discovery or after Barrett produces the complete loan file.

D. The lender/underwriter misidentification theory is plausible.

Barrett argues that it was not the lender and that another lender or underwriter independently approved the loan. That argument does not defeat Plaintiff's claim. It strengthens it.

Plaintiff alleges she did not know during origination that the actual underwriting or approval authority was separate from Barrett. Thornton communicated as though the underwriting process belonged to Barrett, including stating the file was with "my underwriter." Barrett's pre-approval letter and closing documents reinforced that impression by using Barrett letterhead and identifying Barrett in lender/servicer roles.

A borrower should not be left to reverse-engineer the identity of the true lender, underwriter, funder, servicer, and broker after closing. The ambiguity itself is part of the alleged misconduct.

E. Plaintiff's income-inflation and underwriting allegations are sufficiently pleaded.

Barrett argues Plaintiff does not identify the specific false income figure, document, or actor. Plaintiff alleges enough to survive dismissal. Plaintiff has identified the nature of the false or materially questionable data, the loan file area where it appears, the timing of the issue, and the Barrett/Thornton origination pipeline through which the information moved.

Plaintiff alleges that her income and financial condition were not accurately represented, that she had recently been denied for a $160,000 mortgage due to income/obligation issues, and that Barrett nevertheless issued a $160,000 VA pre-approval shortly thereafter. Plaintiff further alleges that the loan file contains income-calculation documents connected to Nikita Singh and loan number 702473679 that raise material questions about the underwriting data.

Plaintiff does not need to attach every income calculation or prove the precise amount of inflation at this stage. The internal underwriting submissions, transmissions, and entries are in the possession of Barrett and/or the lender pipeline. Discovery is required.

F. Barrett cannot avoid liability by pointing to another underwriter.

Barrett argues that underwriting was independently performed by another lender's underwriting department. That does not remove Barrett from the case. Plaintiff alleges Barrett collected, requested, transmitted, or helped package the loan information that went into the underwriting pipeline. If Barrett submitted or transmitted inaccurate information, or if Barrett participated in a process that misled Plaintiff about who was deciding the loan, Barrett's liability does not disappear merely because another entity made the final underwriting decision.

Plaintiff's theory is not that Barrett alone underwrote the loan. Plaintiff's theory is that Barrett, through Thornton and its loan pipeline, participated in the origination, document, and disclosure conduct that caused the loan to proceed.

G. Plaintiff pleads document-alteration and signature-related issues sufficiently as to Barrett's role.

Barrett argues that Plaintiff does not allege Barrett personally altered documents or affixed signatures. Plaintiff alleges that multiple versions of documents, inconsistent disclosures, and

signature issues existed within the transaction and that Barrett was part of the loan-document chain. Barrett's own documents identified it in lender/servicer capacities. Barrett personnel or Barrett-associated persons were involved in document communications.

At this stage, Plaintiff is not required to know which internal actor transmitted each document or who had possession at each moment. Barrett has not produced the complete loan file. Discovery is needed to determine what Barrett received, sent, reviewed, uploaded, relied upon, or transmitted.

H. Plaintiff states a negligent misrepresentation and negligence theory.

Barrett argues Plaintiff fails to plead duty, false information, reliance, or causation. Plaintiff alleges Barrett acted as mortgage broker/originator and borrower-facing loan representative in a VA loan transaction. Barrett and Thornton supplied information to Plaintiff concerning pre-approval, loan approval, underwriting, document needs, insurance requirements, and loan status. Plaintiff relied on those communications.

Plaintiff alleges she suffered harm by proceeding with a transaction she did not fully understand, entering a loan she alleges was fraud-tainted, being placed into a defective property, incurring financial harm, and being forced to pursue records and legal remedies. These allegations are sufficient at the pleading stage.

I. Plaintiff states a RESPA-related theory or should be granted leave to amend.

Barrett argues the RESPA claim fails because Plaintiff has not identified a prohibited kickback, referral fee, or servicing duty. Plaintiff alleges Barrett was part of an undisclosed or inadequately disclosed referral and origination pipeline involving Tina Thornton and the real-estate participants. Plaintiff also alleges Barrett failed to provide the complete loan file and related servicing-transfer documentation.

To the extent Barrett argues that RESPA requires a more precise statutory subsection, Plaintiff requests leave to amend. Plaintiff is a pro se litigant and has alleged facts showing a loan-origination process involving referral concerns, lender misidentification, and failure to produce records. The claim should not be dismissed with prejudice.

J. Plaintiff states a TILA and Regulation Z theory or should be granted leave to amend.

Barrett argues Plaintiff's TILA theory fails because Barrett was not the creditor and because the claim is untimely. Plaintiff alleges that loan documents inaccurately or confusingly identified Barrett as lender while another entity allegedly served as the actual underwriter or funding lender. Plaintiff alleges the required disclosures did not clearly and accurately identify the true creditor/lender relationship and that Plaintiff was not given complete, accurate, understandable disclosures.

Barrett cannot rely on confusing documents to obtain dismissal while denying the role those same documents gave it. If Barrett was not the creditor, then the documents identifying Barrett as lender are part of Plaintiff's disclosure theory. If Barrett acted as broker, then Barrett's role in preparing, transmitting, or presenting inaccurate disclosures remains relevant.

On limitations, Plaintiff alleges concealment, delayed discovery, inconsistent documents, failure to produce records, and post-closing responses that denied responsibility. Limitations should not be resolved on a motion to dismiss where delayed discovery and equitable tolling are plausible.

K. Plaintiff states or should be permitted to amend civil RICO allegations.

Barrett argues Plaintiff fails to plead a RICO enterprise, predicate acts, pattern, causation, and conspiracy. Plaintiff alleges a coordinated mortgage transaction involving document transmissions, electronic communications, lender misidentification, underwriting data, loan documents, post-closing responses, and concealment of the complete loan file. Plaintiff alleges mail and wire communications were used in furtherance of the scheme.

Plaintiff understands that RICO requires specificity and that Local Rule 9.1 may require a separate RICO statement. If the Court finds the current allegations insufficient, Plaintiff requests leave to amend and/or file the required RICO statement rather than dismissal with prejudice.

L. Plaintiff's Fair Housing Act allegations should not be dismissed with prejudice.

Plaintiff is a 100% service-connected disabled veteran. Her service-connected disability is PTSD related to MST and combat trauma. Plaintiff alleges Barrett and its representatives knew or should have known she was a disabled veteran using a VA loan benefit. Plaintiff alleges Barrett's borrower-facing loan process failed to provide clear, accurate, and non-misleading disclosures in a housing-related credit transaction and exploited or failed to account for Plaintiff's disability-related vulnerabilities.

Plaintiff does not allege disability merely as background. Plaintiff alleges protected status and known vulnerability are relevant to how the communications, omissions, pressure, and confusion operated. If the Court finds the Fair Housing Act allegations require more specificity, Plaintiff requests leave to amend.

M. Plaintiff's ADA/Rehabilitation Act allegations should not be dismissed with prejudice.

Barrett argues Plaintiff has not pleaded the necessary ADA or Rehabilitation Act elements. Plaintiff clarifies that her disability is 100% service-connected PTSD related to MST and combat trauma. Plaintiff alleges the transaction involved disability-related vulnerability and a failure to provide meaningful, clear, and non-coercive access to the loan process.

If the Court determines these claims require more precise statutory pleading, Plaintiff requests leave to amend or narrow those claims. Dismissal with prejudice is not appropriate at this stage.

N. Plaintiff's VA loan fraud and federal regulatory allegations support the factual theory.

Barrett argues there is no private cause of action for "VA loan fraud" or VA regulatory violations. Plaintiff's VA-related allegations remain relevant even if they must proceed through fraud, misrepresentation, negligence, TILA, RESPA, FHA, or another cause of action.

Plaintiff alleges Barrett participated in a VA loan transaction where appraisal-related documents, VA loan documents, lender identification, underwriting information, and borrower certifications were used in a misleading or improper way. Plaintiff has identified appraisal-related materials showing Barrett/VA involvement. These facts support Plaintiff's underlying claims and should not be erased merely because Barrett challenges the label of one count.

O. Barrett's appraisal arguments require discovery.

Barrett attempts to separate itself from the appraisal issue. Plaintiff alleges appraisal-related records identify Barrett/VA in connection with the appraisal process, that the appraisal value supported the $160,000 loan approval, and that Barrett's loan pipeline relied on appraisal-related information in moving the loan toward closing.

Whether Barrett ordered, transmitted, relied on, reviewed, or participated in appraisal-related communications is a factual issue. It cannot be resolved on a motion to dismiss.

P. Barrett's failure to produce Plaintiff's complete loan file is independently relevant.

Barrett's motion argues Plaintiff lacks details, while Barrett has not produced Plaintiff's complete loan file despite repeated requests, certified mail, emails, and complaint correspondence. That matters. Barrett cannot withhold or fail to produce records and then argue Plaintiff lacks internal specifics that only the complete loan file would show.

As a broker/originator participating in the loan transaction, Barrett should have records of what it collected from Plaintiff, what it submitted, what it transmitted, what it received, and what it used in the loan process. Plaintiff alleges Barrett has failed to provide those records. That failure supports Plaintiff's concealment theory and warrants discovery.

Q. Civil conspiracy is plausibly alleged or should be amended after discovery.

Barrett argues civil conspiracy fails because Plaintiff does not plead an agreement. Plaintiff alleges coordinated conduct among transaction participants, including Barrett/Thornton, real-estate participants, appraisal-related actors, insurance coordination, loan-document transmissions, and post-closing responses. Plaintiff has identified communications among participants and loan-related document activity.

Agreement may be inferred from coordinated acts. Plaintiff does not need a written conspiracy agreement at the pleading stage. If the Court requires additional specificity, Plaintiff requests leave to amend.

R. Declaratory and injunctive relief should remain tied to the underlying transaction.

Barrett argues declaratory and injunctive relief cannot stand alone. Plaintiff seeks relief concerning the validity, enforceability, and consequences of a loan transaction in which Barrett participated. Barrett's origination, disclosure, document, and records conduct bear directly on the legal validity of the transaction.

Even if another entity later serviced or sought to collect on the loan, Barrett's conduct remains part of the transaction chain. The request for relief should remain at this stage.

S. Barrett's limitations arguments should not be resolved on the face of the pleadings.

Barrett argues several claims are untimely. Plaintiff alleges concealment, delayed discovery, failure to produce the complete loan file, inconsistent documents, contradictory lender labels, and post-closing complaint responses. Plaintiff did not know the full facts during origination and learned additional information only through later document requests, complaints, and produced files.

Limitations defenses should not be resolved on a Rule 12(b)(6) motion unless the bar is clear on the face of the complaint and no tolling is plausible. Here, tolling and delayed discovery are plausible.

T. Dismissal with prejudice is improper.

Barrett seeks dismissal with prejudice. That is not appropriate. Plaintiff is pro se, has pleaded transaction-specific facts, has identified documents and dates, and has been attempting to obtain the complete loan file. If the Court finds any pleading deficiency, Plaintiff requests leave to amend.

A more definite statement, amended complaint, or Local Rule 9.1/RICO statement would address any concern. Dismissal with prejudice would unfairly punish Plaintiff for not possessing documents Barrett has not produced.

V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Barrett Financial Group, LLC's Motion to Dismiss Plaintiff's First Amended Complaint.

In the alternative, Plaintiff respectfully requests that any dismissal be without prejudice and that Plaintiff be granted leave to amend, file a more definite statement, and/or file any Local Rule 9.1 or RICO statement the Court requires.

Respectfully submitted,

This _13_ day of ___May___, 2026.

/s/ Nikki M. Harper

Nikki M. Harper
Plaintiff Pro Se
1529 Pinebrook Court, Apt. 2
Greenville, North Carolina 27858
harperdenece@gmail.com

_____

CERTIFICATE OF SERVICE

I hereby certify that on this _13_ day of ___May___, 2026, I served a true and correct copy of the foregoing Plaintiff's Opposition to Defendant Barrett Financial Group, LLC's Motion to Dismiss Plaintiff's First Amended Complaint by placing the same in the United States Mail, postage prepaid, addressed to all counsel of record and pro se parties requiring service, including the following:

Jennifer R. Burbine
McGuireWoods LLP
Counsel for Lakeview Loan Servicing, LLC and Mr. Cooper Loans/Nationstar Mortgage
Email: jburbine@mcguirewoods.com

Christopher A. Cosper
Hull Barrett, PC
Counsel for Findley, Edenfield & Green LLC, Danielle Neath, and Mark Green
Email: ccosper@hullbarrett.com

Camille D. Dizon
MG+M The Law Firm
Counsel for All Star Home Inspections, LLC and Chuck Tolbert
Email: camille.dizon@mgclaw.com

William M. Fleming
The Fleming Firm
Counsel for Mary Yelton Realty, Anne Marie Kyzer, and Max Boswell

Email: theflemingfirm@gmail.com

David Andrew Folkner
Weissman PC
Counsel for VanderMorgan Realty and Justin Bolin
Email: andrewf@weissman.law

Brian S. Goldberg
Buchalter LLP
Counsel for Barrett Financial Group, LLC
Email: bgoldberg@buchalter.com

Roger A. Wright
Wright Law Firm, PLC
Counsel for Barrett Financial Group, LLC
Email: office@wrightlawaz.com

Wendell E. Johnston, Jr.
Johnston Smith LLP
Counsel for Kathryn "Katie" Nix French
Email: wendell@johnstonsmithlaw.com

Cory P. Sims
BDF Law Group
Counsel for United Wholesale Mortgage
Email: corys@bdfgroup.com

Tina Thornton
Defendant Pro Se
1002 Ring Neck Way
Sparks, Nevada 89441

Respectfully submitted,

/s/ Nikki M. Harper

Nikki M. Harper
Plaintiff Pro Se
1529 Pinebrook Court, Apt. 2
Greenville, North Carolina 27858

Nikki Harper
1529 Pinebrook Ct.
APT 2
Greenville NC 27858

Clerk of Court
US District Court
Augusta Division
600 James Brown
Blvd