IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| NIKKI HARPER,<br><br>Plaintiff,<br><br>vs.<br><br>BARRETT FINANCIAL GROUP, LLC, et. al.,<br><br>Defendants. | Civil Action No.<br>1-25-cv-00203-JRH-BKE |

**DEFENDANT BARRETT FINANCIAL GROUP, LLC'S REPLY IN SUPPIORT OF TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## INTRODUCTION

A response to a motion to dismiss is not a second pleading. It cannot supply what the complaint omits, rewrite what the complaint says, or save a count by promising particulars that discovery may someday deliver. Yet that is what Plaintiff asks the Court to accept. Citing not even a single case in support of her positions, Plaintiff's Response names individuals in her brief who are not tied to the counts, labels broad categories of conduct as the "who, what, when, where, and how," concedes her RICO theory may need to be repleaded after discovery, and invokes *pro se* leniency despite pleading duties imposed by the Federal Rules and this Court's Local Rules. The First Amended Complaint (FAC) pleads against "All Defendants" in the fraud and negligence counts, combines distinct origination and servicing theories in statutory counts, and does not identify what Barrett, as distinct from other actors, did, said, signed, concealed, or obtained. (Doc. 58-1 at 7, 11-12, 14-16). Plaintiff's Response does not cure those defects.

## I. FACTUAL CLARIFICATION

Before turning to law, a brief clarification of the record is in order, because Plaintiff's Response rests on a mistaken premise about the loan's status at closing. Plaintiff alleges that closing occurred on January 9, 2024. (Doc. 29 at 1; Doc. 98 at 4). UWM's filing states that, as a matter of public record, on that day Plaintiff executed a Note in favor of Barrett Financial Group, LLC in the amount of $160,000 to finance her purchase of 115 Carolyn Street, Sardis, Georgia. (Doc. 33-1 at 2). UWM also states that repayment of the loan was secured by a Security Deed recorded in the official land records of the Clerk of the Superior Court of Burke County, Georgia, as Document No. D20240000092, Book 1307, Page 295, in favor of Barrett Financial Group, LLC. (Doc. 33-1 at 2, 11-12).

UWM further states that, on or about January 11, 2024, it purchased the loan and its servicing rights from Barrett. (Doc. 33-1 at 2-3, 12). UWM then sold the loan to Ginnie Mae on or about February 9, 2024, and transferred the servicing rights to Lakeview Loan Servicing on or about August 2, 2024. (Doc. 33-1 at 3). Those statements align with Plaintiff's own allegation that the Notice of Servicing Transfer issued at closing identified Barrett as the "Current Servicer" transferring servicing to UWM. (Doc. 29 ¶ 54). The premise running through Plaintiff's fraud, TILA, RESPA, and RICO theories, namely that Barrett was "misidentified" as the lender while someone else held that role at consummation, is not supported by the documents Plaintiff cites and is contradicted by the very party Plaintiff calls the "actual" lender.

## II. PLAINTIFF’S FAC REMAINS AN IMPERMISSIBLE SHOTGUN PLEADING.

The Eleventh Circuit has identified four categories of shotgun pleadings, and the FAC commits at least three of them. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). The most common, and the one Plaintiff's Response does not deny, is a

complaint "containing multiple counts where each count adopts the allegations of all preceding counts." *Id*. at 1321. Plaintiff defends that practice claiming that “Plaintiff alleges coordinated conduct because the transaction involved multiple parties, but Plaintiff also identifies Barrett-specific conduct.” (Doc. 98 at 5). Upon careful review of the FAC, it is evident that Plaintiff improperly incorporates every preceding paragraph into each subsequent count; conduct the Eleventh Circuit has identified as the first “mortal sin.” *Weiland*. at 1321.

The FAC also commits the second sin, pleading conclusory and vague allegations that do not tie to specific elements of any count. *Weiland*. at 1321-22. And it commits the fourth sin, asserting "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id*. at 1323. Counts I and II are pleaded against "All Defendants Including Mr. Cooper/Nationstar, UWM, Lakeview" and "All Defendants," respectively. (Doc. 29 at 11-12; Doc. 58-1 at 8, 11-12). Plaintiff's Response does not point to a count that separates Barrett's conduct from that of the title firm, the realtor, the inspector, the closing attorney, the underwriter, the funding lender, or the servicer.

Plaintiff's Response argues that her allegations are "identifiable" because she names a handful of people in her brief. (Doc. 98 at 2). Identifiability is not specificity. Rule 8 is not satisfied by a roster of names recited in opposition to a motion to dismiss; it is satisfied by a complaint that connects a particular defendant to particular conduct supporting each count. *See Weiland*, 792 F.3d at 1323. Plaintiff's roster confirms the problem rather than solving it. She tells the Court that the FAC's "who" includes Barrett "acting through Tina Thornton," then "Trevor Barrett, whose name appeared on Plaintiff's Closing Disclosure," and then "Brian Morgan, who later responded" after closing. (Doc. 98 at 2). Three different people, three different time frames, three different roles,

all bundled together and dropped into the same undifferentiated count. That is the very pleading style the Eleventh Circuit condemned in *Weiland*.

Nor can Plaintiff cure the defect by adding clarifying detail in her opposition brief. A complaint is measured by what it says, not by what its drafter later wishes it had said. If Plaintiff's Response identifies allegations the FAC does not contain, the Court must measure the pleading by the pleading. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (sufficiency turns on the well-pleaded factual allegations of the complaint itself). Because the FAC fails to satisfy basic pleading requirements, it should be dismissed.

## III. PLAINTIFF'S RESPONSE DOES NOT CURE THE RULE 9(B) DEFECT.

Plaintiff's Response confirms, rather than cures, the pleading defects identified in Defendants' motion. After being advised that Rule 9(b) requires the "who, what, when, where, and how" of the alleged fraud, Plaintiff attempts to retrofit the Complaint by organizing her Response under those headings. (Doc. 98 at 2). But Rule 9(b) is not satisfied by labeling sections "who," "what," "when," "where," and "how" and then populating them with generalized categories of alleged misconduct. Categories are not particulars. The Eleventh Circuit has long required more. A Rule 9(b) pleading must identify "the precise statements, documents, or misrepresentations made," "the time and place of and person responsible for the statement," "the content and manner in which these statements misled the plaintiff," and "what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997), quoted in *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). The FAC does not meet that standard, and the Response does not redeem it.

Four specifics demonstrate the gap. First, on income falsification. Plaintiff's Response says only that her "income and underwriting information was false, inflated, or materially questionable"

and that the "loan file contains income-calculation documents connected to . . . loan number 702473679 that raise material questions about the underwriting data." (Doc. 98 at 3, 6.) That is the "substantial questions" formulation the Motion already addressed, (Doc. 58-1 at 9-10), in different words.

Pleading that questions exist is not a pleading that fraud occurred. *See Iqbal*, 556 U.S. at 678. Rule 9(b) requires identification of the false figure, the document where it appears, and the actor who placed it there. Plaintiff identifies none. The mere allegation that one lender denied a loan and another approved it weeks later is not fraud. Different lenders apply different underwriting overlays, and VA residual-income tests differ from conventional debt-to-income ratios. The disjunction between two lenders' outputs is not a particularized allegation of fraud. Plaintiff's identification of Nikita Singh as the underwriter associated with loan number 702473679 (Doc. 98 at 3, 6) is itself a concession that defeats her income-fraud theory against Barrett. Plaintiff does not allege Singh was Barrett's employee. She alleges, instead, that the underwriting decision was made by UWM. (Doc. 29 at 9; Doc. 98 at 3.) A broker who did not underwrite cannot have committed underwriting fraud.

Second, on document alteration. Plaintiff's Response concedes that she "does not allege Barrett personally altered documents or affixed signatures." (Doc. 98 at 6-7.) She alleges instead that "multiple versions of documents, inconsistent disclosures, and signature issues existed within the transaction." *Id.* Existence is not authorship. The FAC pleads document alteration against another defendant, not Barrett. (Doc. 29 at 8-9; Doc. 58-1 at 10.) Rule 9(b) does not permit a plaintiff to drag a broker into a fraud claim by pointing at the fraud of someone else. *See Brooks*, 116 F.3d at 1371.

Third, on the named individuals. Identifying Tina Thornton and others does not satisfy Rule 9(b) when the FAC does not tie any of them to a particular false statement made on a particular date in a particular document with knowledge of falsity. Plaintiff alleges, by her own admission, that Trevor Barrett "was not her day-to-day contact" and that her communications were "primarily with Tina Thornton." (Doc. 98 at 2-3). She alleges that Brian Morgan's statements came after closing, in response to records requests. *Id*. at 2, 4. A statement made after the contract is executed cannot have induced its execution. Post-closing conduct may have other consequences in other contexts, but it cannot retroactively become a fraudulent inducement of a transaction that had already closed. *See Brooks*, 116 F.3d at 1371 (Rule 9(b) requires "the content and manner in which these statements misled the plaintiff").

Fourth, on the group-pleading defect within Rule 9(b). Even when several defendants are alleged to have participated in a fraud, the complaint must specify what role each defendant played. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). Plaintiff's Response acknowledges that her allegations describe a "pipeline" of multiple defendants (Doc. 98 at 5). But a pipeline is not a particularized fraud allegation; it is a metaphor. Rule 9(b) requires more.

## IV. THE STATUTE OF LIMITATIONS BAR IS PLAIN ON THE FACE OF THE PLEADING.

Plaintiff's Response treats the statute of limitations as if it necessarily must await discovery. It need not. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), holds that a limitations defense may be resolved on a Rule 12(b)(6) motion when the defect is apparent from the face of the pleading. The defect here is apparent on the face of the FAC and confirmed by Plaintiff's Response.

Plaintiff alleges that closing occurred on January 9, 2024. (Doc. 29 at 1; Doc. 98 at 4). She alleges that the documents that identified Barrett as "Lender" or "Current Servicer" were the Closing Disclosure, the Borrower Property Condition Certificate, the Appraisal Disclaimer, and the Notice of Servicing Transfer. (Doc. 29 at 9; Doc. 58-1 at 3). She alleges that she signed those documents at closing. (Doc. 29 at 9). The label she now calls a misrepresentation was therefore in her hands the moment she signed it.

That dating is fatal to her TILA damages theory. TILA requires that any action for damages be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Eleventh Circuit has held that TILA disclosure violations occur "at the time the loan transaction is consummated," in other words, at closing. *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 838 (11th Cir. 2010). Plaintiff filed this action on September 2, 2025, twenty months after closing (Doc. 58-1 at 13). Her FAC was filed on March 18, 2026, twenty-six months after closing. *Id*. The one-year window had closed twice over before she filed.

Plaintiff's Response answers with "concealment" and "delayed discovery." (Doc. 98 at 8, 10). But those labels do not avoid the dates pleaded here. The alleged "misidentification" of Barrett as "Lender" was visible on the face of documents Plaintiff alleges she signed on January 9, 2024. *Frazile* is unpublished, but it is persuasive on the ordinary accrual rule: TILA disclosure claims accrue when the loan transaction is consummated. *See Frazile*, 382 F. App'x at 838. Plaintiff also points to documents she obtained later from the seller side and from Mr. Cooper, including a fireplace amendment, a Stephen Sikes repair receipt, and certain VA paperwork. (Doc. 98 at 9-10). Those later discoveries, even taken as true, concern other defendants and other documents. They do not toll the one-year TILA bar as to Barrett because the alleged TILA defect against Barrett, the "Lender" label, was visible to Plaintiff in January 2024.

Plaintiff's invocation of equitable tolling fails for the same reason. Tolling of TILA's one-year window requires the plaintiff to plead, with Rule 9(b) particularity, that the defendant affirmatively concealed the cause of action itself, and that the plaintiff could not have discovered the violation through reasonable diligence. *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998). Plaintiff pleads neither. The alleged misrepresentation she points to, the "Lender" label, was on documents she signed at closing. A label visible to the borrower at the moment of consummation is the opposite of a concealed cause of action.

The same analysis disposes of Plaintiff's origination-based RESPA theory under 12 U.S.C. §§ 2607 and 2608, both of which carry a one-year period. 12 U.S.C. § 2614. As Barrett's Motion explained, that window expired before Plaintiff filed. (Doc. 58-1 at 15-16.) Plaintiff's Response does not engage the timing. It points instead at the longer three-year window for servicing claims under § 2605 (Doc. 98 at 7-8). But Plaintiff's own allegations direct the servicing claims to Mr. Cooper and Lakeview, not Barrett. (Doc. 29 at 12). The longer window does not rescue a claim against a defendant who is not in it.

## V. BARRETT WAS THE LENDER AT CLOSING, AND THE "LENDER" LABEL WAS NOT FALSE.

Plaintiff's principal substantive theory against Barrett is that certain closing documents identified Barrett as "Lender" while UWM was, in her words, the "actual underwriter and funding lender." (Doc. 29 at 9; Doc. 98 at 3.) Plaintiff acknowledges Barrett is "a mortgage brokerage, not a lender." (Doc. 29 at 4; Doc. 58-1 at 2.) She then asks the Court to treat the use of "Lender" on those forms as common-law fraud.

On this point the materials before the Court undermine Plaintiff's theory. Three sources identify Barrett as the lender of record at closing. First, UWM states that the Security Deed Plaintiff

executed on January 9, 2024 was recorded in the official land records of the Clerk of the Superior Court of Burke County, Georgia, as Document No. D20240000092, Book 1307, Page 295, in favor of Barrett Financial Group, LLC. (Doc. 33-1 at 2, 11-12). That recorded Security Deed, as described by UWM, identifies Barrett as the secured creditor on the loan that funded Plaintiff's purchase.

Second, UWM, the entity Plaintiff calls the "actual" lender, states in its own filing that "Barrett Financial Group LLC was the lender on the Loan" and that UWM purchased the loan and its servicing rights from Barrett "on or about January 11, 2024, subsequent to the closing." (Doc. 33-1 at 2-3, 12). UWM further states that it later sold the loan to Ginnie Mae on or about February 9, 2024, and transferred the servicing rights to Lakeview Loan Servicing on or about August 2, 2024 (Doc. 33-1 at 3). Whatever else may be disputed in this case, both Barrett and UWM take the position that Barrett was the lender at consummation and that UWM was the secondary-market purchaser.

Third, Plaintiff's own pleading alleges that the Notice of Servicing Transfer issued at closing identified Barrett as the "Current Servicer" transferring servicing to UWM. (Doc. 29 at 9; Doc. 58-1 at 4). That allegation is consistent with an origination and immediate-transfer sequence, not with fraud. The Closing Disclosure, the Borrower Property Condition Certificate, the Appraisal Disclaimer, the Notice of Servicing Transfer, and the recorded Security Deed as described by UWM all point in the same direction: Barrett was identified as the lender or current servicer at consummation, and the transfer to UWM occurred later. There is nothing fraudulent about a lender originating a loan and then selling it in the ordinary course of the secondary mortgage market.

Falsity is the first element of common-law fraud under Georgia law, and without it the remaining elements do not survive. A plaintiff must plead a false representation, scienter, intent to

induce, justifiable reliance, and damages. *Cf. Crawford v. Williams*, 258 Ga. 806, 808, 375 S.E.2d 223 (1989) (reciting the five elements of Georgia common-law fraud). Federal regulation defines the "Lender" identified on the Closing Disclosure as "the person to whom the obligation initially will be payable." 12 C.F.R. § 1026.38(r)(2)(i). Plaintiff and UWM agree that the obligation was initially payable to Barrett. (Doc. 29 at 9; Doc. 33-1 at 2-3). The "Lender" label was not false when made because Barrett was the lender. A label that describes the truth at the moment it is made cannot be transformed into fraud by what happens to the loan two days later.

Plaintiff's reliance theory fails for the same reason. She does not plead that, had the Closing Disclosure listed UWM rather than Barrett in the "Lender" box, she would have walked away from the closing table. She does not plead that she would have refinanced with her credit union, asked for different terms, or refused to sign. The FAC says she relied on the "Barrett/Thornton loan process by continuing the transaction." (Doc. 98 at 5.) That is reliance on the transaction as a whole, not reliance on the label. Reliance must be tied to the specific representation alleged to have been false. *See Brooks*, 116 F.3d at 1371. A label dispute, untethered from any concrete change in conduct Plaintiff would have made, is not a fraud claim.

## VI. LOCAL RULE 9.1 REQUIRES DISMISSAL OF THE TILA AND RICO COUNTS, AND THE RICO THEORY FAILS SUBSTANTIVELY AS WELL.

Local Rule 9.1 of this District provides that pleadings asserting claims under TILA, Regulation Z, RICO, and similar statutes "shall specifically state each alleged violation," and that, upon motion, "such pleading shall be dismissed without prejudice" if it does not. S.D. Ga. L.R. 9.1. The Rule further requires a RICO claimant to file, "upon filing, or within fourteen (14) days of removal or transfer," a separate RICO statement. *Id*.

Plaintiff's Response concedes she did not comply. She writes that she "understands that RICO requires specificity and that Local Rule 9.1 may require a separate RICO statement," and she asks for leave to "amend and/or file the required RICO statement" later. (Doc. 98 at 8). The Local Rule does not give a claimant the option to file a RICO statement after the merits have been challenged. It requires the statement at the outset, so that the defendant knows what predicate acts, what enterprise, what pattern, and what causation the claimant intends to prove. Plaintiff did not file the statement. The Rule, by its own terms, directs dismissal.

The same is true of TILA and Regulation Z. The FAC pleads, at most, that "Defendants violated TILA" by "failing to accurately identify the actual creditor" and by "using inaccurate underwriting inputs." (Doc. 29 at 12-13). It does not identify the particular subsection of TILA or the particular section of Regulation Z that Barrett violated. Plaintiff's Response does not fill the gap. It defends generality with generality. (Doc. 98 at 7-8). Local Rule 9.1 does not tolerate that.

Even setting Local Rule 9.1 aside, the RICO theory fails on the merits. A civil RICO claim under 18 U.S.C. § 1962(c) requires the plaintiff to plead, among other things, the existence of an enterprise, a pattern of racketeering activity, and an injury proximately caused by the RICO violation. *Ray v. Spirit Airlines, Inc*., 836 F.3d 1340, 1348-49 (11th Cir. 2016). Plaintiff pleads none of these elements with anything beyond the conclusory recitations the Supreme Court rejected in *Iqbal* and *Twombly*. She labels Defendants an "enterprise," labels their communications "mail and wire fraud," and labels the result a "pattern." (Doc. 29 at 14.) The Eleventh Circuit has affirmed dismissal where a complaint failed adequately to plead enterprise and proximate cause. *Ray*, 836 F.3d at 1350-52.

More fundamentally, no further pleading could save Plaintiff's RICO theory because the FAC pleads a single residential transaction. The Eleventh Circuit has held that a RICO pattern

requires "the threat of continuing racketeering activity," and that threat cannot arise from a single closed-ended scheme to accomplish a single objective. *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1264-67 (11th Cir. 2004); *see also Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290-91 (11th Cir. 2010). A single residential mortgage transaction, even one tangled with multiple service providers, does not become a pattern simply because the borrower disputes more than one document inside it. Plaintiff's FAC alleges one purchase, one loan, one closing, and one stream of post-closing communications about that closing. (Doc. 29 at 1-2, 12-14.) No amount of relabeling individual communications as separate predicate acts can stretch a single residential closing into the kind of continuing criminal enterprise that 18 U.S.C. § 1962 was written to reach.

Plaintiff's request for discovery to find a RICO claim turns the Federal Rules on their head. Discovery is not a search party. It is the engine that follows a properly pleaded complaint, not the substitute for one. *See Iqbal*, 556 U.S. at 678-79. A claimant who admits she lacks the facts needed to plead a claim is a claimant who has no claim to discover.

## VII. THE NEGLIGENT MISREPRESENTATION AND NEGLIGENCE COUNT FAILS AS A MATTER OF LAW.

Count II asserts negligent misrepresentation and negligence against "All Defendants." (Doc. 29 at 11-12; Doc. 58-1 at 12). Plaintiff's Response defends the count by saying that Barrett "supplied information to Plaintiff concerning pre-approval, loan approval, underwriting, document needs, insurance requirements, and loan status." (Doc. 98 at 7). That description identifies the routine work of a mortgage broker. It does not identify a tort.

Negligent misrepresentation under Georgia law requires the defendant to have negligently supplied false information to a foreseeable plaintiff, justifiable reliance, and economic injury proximately caused by the reliance. *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas,*

*Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727 (1997); *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1030 (11th Cir. 2003). The FAC identifies no false information Barrett supplied. Plaintiff's Response identifies no false information Barrett supplied. The most that can be said is that Barrett supplied information about the loan as the broker, and that Plaintiff later became unhappy with the loan.

Negligence requires duty, breach, causation, and damages. The FAC alleges Barrett acted as a mortgage broker. (Doc. 29 at 4). It does not allege that Barrett owned the property, performed the inspection, conducted the appraisal, handled the closing, or serviced the loan after transfer. (*Id*. at 4-10). On those facts, the pleading does not plausibly show that Barrett owed Plaintiff a tort duty as to the condition of the property, the appraisal's substantive conclusions, or later servicing conduct. Causation is also missing. Plaintiff's alleged injuries trace chiefly to the condition of the property, to alleged inspection failures, to alleged closing irregularities, and to later servicing conduct by other defendants. (*Id*. at 7-11). The FAC does not plausibly allege how any negligent act by Barrett, as distinct from the conduct of those other participants, proximately caused those injuries. Count II therefore fails as to Barrett.

Plaintiff's appraisal allegations against Barrett add nothing to her negligence theory. Her Response treats Barrett's appraisal involvement as a factual question requiring discovery. (Doc. 98 at 9). That is not the standard. Plaintiff identifies no false statement by Barrett about the appraisal's substance, no Barrett employee responsible for an appraisal communication, and no Barrett act that breaches any cognizable duty. Mortgage brokers do not warrant appraisal content; the federal appraiser-independence rules sharply limit any broker role in appraisal substance. 15 U.S.C. § 1639e; 12 C.F.R. § 1026.42. Speculation that Barrett "ordered, transmitted, relied on, reviewed, or participated in" appraisal communications, (Doc. 98 at 9), is not a Rule 9(b) allegation of fraud

and not a Rule 8 allegation of negligence. A pleading that points at a process and asks for discovery is not a pleading at all.

## VIII. THE RESPA COUNT FAILS UNDER §§ 2605, 2607, AND 2608.

RESPA provides a private right of action only in limited circumstances: kickbacks and unearned fees under 12 U.S.C. § 2607, required use of a particular title insurer under 12 U.S.C. § 2608, and certain servicing duties under 12 U.S.C. § 2605. Plaintiff's Response addresses all three theories but tethers none of them to Barrett.

Under § 2607, Plaintiff must plead an actual exchange of a fee, kickback, or thing of value pursuant to an agreement to refer settlement-services business. (Doc. 58-1 at 15.) She does not. Her Response describes an "undisclosed referral relationship" between Schroder and Thornton, (Doc. 98 at 7-8), and asks the Court to treat a personal friendship and a referral as a kickback. A friendship and a referral, without factual allegations of a prohibited payment, do not state a Section 2607 claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even if the allegation were adequate, the one-year window of 12 U.S.C. § 2614 expired before Plaintiff filed her original Complaint.

Under § 2605, the servicing-related allegations are directed at Mr. Cooper and Lakeview, not Barrett. (Doc. 29 at 12; Doc. 98 at 7-8.) Plaintiff cannot plead a servicing violation against a defendant her own pleading admits was not the servicer during the period at issue. And Section 2608, which concerns required title insurer selection, is not even fairly raised by any allegation in the FAC.

## IX. THE FAIR HOUSING ACT AND ADA/REHABILITATION ACT COUNTS DO NOT PLEAD DISABILITY-BASED DISCRIMINATION.

Counts V and VI rest on Plaintiff's status as a 100% service-connected disabled veteran. Plaintiff's Response confirms her status, (Doc. 98 at 8), but status is not a claim. The Fair Housing Act prohibits discrimination because of handicap in housing-related transactions, including refusals to make reasonable accommodations and interference under 42 U.S.C. §§ 3604(f) and 3617. A reasonable-accommodation claim requires the plaintiff to plead a specific accommodation that was requested, that was necessary for equal opportunity to use and enjoy the dwelling, and that the defendant refused. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

The FAC pleads none of these elements as to Barrett. Plaintiff does not allege that she requested any accommodation from Barrett or that Barrett denied one. She does not allege that Barrett adopted a policy with a discriminatory effect or interfered with her exercise of FHA rights. Her Response describes "disability-related vulnerabilities," (Doc. 98 at 8), but vulnerabilities are not policies and they are not interference. The same is true of the ADA. Title III applies to public accommodations and provides only injunctive relief, see 42 U.S.C. §§ 12182(a), 12188(a), and the FAC identifies no Barrett public accommodation, no denied access, and no real and immediate threat of future injury. The Rehabilitation Act, in turn, reaches programs receiving federal financial assistance, 29 U.S.C. § 794(a), and the FAC does not allege Barrett is such a program.

## X. COUNT VII CANNOT STAND BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION FOR VA LOAN REGULATIONS.

Plaintiff's Response concedes there is no private cause of action for VA regulatory violations and asks instead that her VA-related allegations "support" her other claims. (Doc. 98 at 9). That concession ends Count VII as a stand-alone claim. Federal regulations do not create

private rights of action absent a statute showing congressional intent to create one. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). Courts have rejected attempts by borrowers to enforce VA publications and comparable federal lending requirements absent such a statutory right. *Rank v. Nimmo*, 677 F.2d 692, 700-02 (9th Cir. 1982) (no private cause of action under VA loan-guaranty regulations). The VA loan-guaranty regulations at 38 C.F.R. Part 36 are no exception. Congress vested enforcement of those regulations in the Secretary of Veterans Affairs, not in private litigants. A borrower who believes a VA-program rule has been broken may pursue administrative remedies. She may not convert those rules into a private tort.

## XI. CIVIL CONSPIRACY CANNOT STAND WITHOUT AN UNDERLYING TORT.

Under Georgia law, civil conspiracy is not a freestanding tort. It is derivative. The Georgia Supreme Court has held that "the conspiracy itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." *Cook v. Robinson*, 216 Ga. 328, 116 S.E.2d 742 (1960); *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp*., 272 Ga. App. 780, 781-82, 613 S.E.2d 112 (2005). Where the underlying tort fails, the conspiracy claim falls with it.

That rule disposes of Count IX as to Barrett. Plaintiff's fraud, negligence, RESPA, TILA, RICO, FHA, ADA, and VA-related theories all fail as to Barrett for the reasons set out above. The conspiracy count therefore has no foundation. It is all roof and no walls. Count IX also fails on its own terms. Plaintiff offers coordinated communications and an August 2025 email. (Doc. 98 at 9). Being copied on a multi-party email is not a handshake in a back room. It does not plausibly transform Barrett's limited alleged role at origination into membership in a tortious agreement.

## XII. DECLARATORY AND INJUNCTIVE RELIEF DO NOT LIE AGAINST BARRETT.

Declaratory and injunctive relief are remedies, not freestanding causes of action. 28 U.S.C. § 2201(a); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Because Plaintiff has not adequately pleaded a substantive claim against Barrett, Count X cannot stand on its own against Barrett.

Beyond that, Plaintiff does not allege any future foreclosure or collection threatened by Barrett. The Notice of Servicing Transfer she relies on identifies the servicer who would conduct that activity, not Barrett. (Doc. 29 at 9). UWM has confirmed that it sold the loan to Ginnie Mae on or about February 9, 2024, and that servicing was transferred to Lakeview Loan Servicing on or about August 2, 2024. (Doc. 33-1 at 3). Barrett does not hold the loan, does not service the loan, and did not, and cannot foreclose the loan. An injunction requires a defendant who can be enjoined, and a declaration requires a defendant against whom a present controversy exists. Barrett is neither.

## XIII. PLAINTIFF'S "LOAN FILE" ARGUMENT DOES NOT EXCUSE PLEADING FAILURES OR TOLL LIMITATIONS.

Plaintiff repeatedly characterizes Barrett's alleged failure to produce her "complete loan file" as both concealment supporting her fraud counts and an equitable reason to defer dismissal until discovery. (Doc. 98 at 9-10). Neither characterization is correct. First, no pre-litigation duty obligates a closed mortgage broker to deliver its working file to a borrower on informal demand. The only borrower-initiated production right Plaintiff identifies, RESPA § 2605's Qualified Written Request and Notice of Error processes, applies to servicers, not brokers, and Plaintiff pleads no QWR served on Barrett. 12 U.S.C. § 2605(e); 12 C.F.R. § 1024.36. Second, alleged non-production cannot toll TILA's one-year window because Plaintiff has not pleaded with Rule 9(b) particularity what was concealed, by whom, and how the alleged concealment prevented her from

discovering facts that appeared on the documents she signed at closing. *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998). Third, the Federal Rules do not contemplate using discovery to identify the predicates a Rule 9(b) complaint must allege at the outset. *See Iqbal*, 556 U.S. at 678-79.

## XIV. *PRO SE* STATUS DOES NOT PERMIT THE COURT TO REWRITE THE PLEADING.

Plaintiff invokes the rule that *pro se* pleadings are construed liberally. (Doc. 98 at 4). Although Plaintiff cites no case law supporting her position, Barrett does not dispute that rule. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But fairness runs both directions. The same Circuit that announced liberal construction has also announced its limit. "This leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Liberal construction asks the Court to read the words on the page generously. It does not ask the Court to add the words the pleader forgot to write.

Plaintiff also relies on the rule, without legal citation, that dismissal with prejudice is improper where a more carefully drafted pleading could state a claim. (Doc. 98 at 10). That rule has a condition. *See Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291-92 (11th Cir. 2018). It presumes the pleader has made a good-faith effort to identify the facts that support each claim and has fallen short for reasons that more careful drafting could correct. It does not apply where, as here, the pleader concedes she cannot plead a RICO claim without discovery and asks the Court to defer the Local Rule until then. A second amendment cannot rest on a confession that the facts are not yet known.

## XV. FURTHER AMENDMENT WOULD BE FUTILE.

Plaintiff has now had two chances to plead her case. The original Complaint was met with motions to dismiss from several Defendants. She amended once. Her First Amended Complaint drew Barrett's Motion. Her Response to that Motion has now told the Court, in her own words, what additional facts she would offer if given a third chance. Those words do not include a particular false statement by a Barrett representative on a particular date in a particular document. They do not include a Barrett-specific kickback, a Barrett-specific accommodation request and denial, or a Barrett-specific predicate act. They include only categories of conduct, named individuals untethered to specific misstatements, and a request to defer the Local Rule 9.1 RICO statement until discovery.

Where a plaintiff has already amended, the Court need not grant further leave to amend if the proposed amendment would be futile, would prejudice the defendant, or would not cure the defects identified. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Futility is the relevant principle here. Plaintiff's Response is the road map for what a Second Amended Complaint would say. The road map does not lead to a viable claim against Barrett. The fundamental facts that defeat Plaintiff's theories, namely that Barrett was the lender at closing and that the documents she calls misleading were in her hand when she signed them, do not change with a third draft.

Nor would partial leave to file a Local Rule 9.1 statement save the RICO theory. The Rule requires the statement at the outset for a reason. It is meant to test, before discovery begins, whether the claimant can identify the enterprise, the pattern, the predicate acts, and the causal chain. Plaintiff has now had two opportunities to make that showing. The Response tells the Court that she cannot do so without discovery. (Doc. 98 at 8). That is not a request for leave. It is a request to use discovery as a substitute for pleading, and *Iqbal* forbids it. 556 U.S. at 678-79.

## CONCLUSION

Plaintiff's Response is a brief, not a pleading. It tells the Court what the FAC could have alleged and what the FAC might allege after discovery, when the Federal Rules and the Local Rules require the Court to evaluate what the FAC actually alleges now. As numerous defendants have pointed out, the FAC pleads by group, alleges fraud without particulars, invokes statutes without specifying an actor's specific violation, and relies on a label dispute that is time-barred as to TILA damages and inconsistent with the loan-transfer chronology described in the parties' filings. Those defects do not improve with explanation. They are not cured by a response brief, and they are not cured by a promise that discovery will help. Barrett respectfully requests that the Court grant the Motion and dismiss the claims against Barrett Financial Group, LLC with prejudice where the defects are merits-based, time-barred, or futile, and without further leave to amend where Plaintiff's Response confirms that amendment would not cure the Barrett-specific deficiencies.

Dated: May 30, 2026.

*By: /s/ Roger A. Wright*
Roger A. Wright *(Pro Hac Vice)*
Arizona Bar No.: 014105
**WRIGHT LAW FIRM, PLC**
4140 E. Baseline Road, Suite 101
Mesa, Arizona 85206
Telephone: (480) 558-1700
Email: office@wrightlawaz.com

Brian Goldberg
Georgia Bar No.: 128007
**BUCHALTER LLP**
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Email: bgoldberg@buchalter.com

*Attorneys for Barrett Financial Group*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2026, I electronically filed the foregoing Defendant Barrett Financial Group, LLC's Memorandum of Law in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record. I further certify that I served a true and correct copy on any party not receiving notice through CM/ECF by US Mail, postage prepaid, addressed as follows:

Nikki Harper
1529 Pinebrook Court, Apt A2
Greenville, NC 27858
*Plaintiff Pro Se*

DATED: May 30, 2026.

By: */s/ Roger A. Wright*

Roger A. Wright (*Pro Hac Vice)*
Arizona Bar No.: 014105
**WRIGHT LAW FIRM, PLC**
4140 E. Baseline Road, Suite 101
Mesa, Arizona 85206
Telephone: (480) 558-1700
Email: office@wrightlawaz.com
*Attorney for Defendant Barrett Financial Group*