**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| NIKKI HARPER,<br><br>Plaintiff,<br>vs.<br><br>BARRETT FINANCIAL GROUP, LLC, et al.,<br><br>Defendants. | Civil Action No.<br>1:25-cv-00203-JRH |

**MEMORANDUM OF LAW IN SUPPORT OF BARRETT FINANCIAL GROUP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

This is Plaintiff's third pleading. (Doc. 1 at 1; Doc. 29 at 1; Doc. 148 at 1.) Before she filed it, Plaintiff promised "detailed, specific factual allegations organized by [D]efendant and by claim, including the who, what, when, where, and how of each Defendant's role in the fraudulent conduct at issue." (Doc. 115 at 2.) The Court granted leave. (Doc. 145 at 8–9.)

Plaintiff's Second Amended Complaint ("SAC") still does not state a plausible, defendant-specific claim for relief against Barrett Financial Group, LLC ("Barrett"). Barrett moves to dismiss each count asserted against it. Among other theories, Plaintiff invokes the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq. TILA governs consumer-credit disclosures, including identification of the creditor and disclosure of loan terms; RESPA regulates specified mortgage-servicing duties

and settlement-service referral practices. Neither statute supplies a viable claim against Barrett on the facts Plaintiff pleads.

On January 9, 2024, Plaintiff bought a house in Burke County, Georgia, with the help of a $160,000 VA-guaranteed purchase-money loan. This case arises from that transaction. (Doc. 148 at 20 (¶ 75).)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a complaint must contain enough factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts, not legal conclusions, threadbare elements, labels, or formulaic recitations. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

A limitations defense may be resolved under Rule 12(b)(6) when untimeliness appears on the complaint's face. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Article III standing, by contrast, is jurisdictional and addressed under Rule 12(b)(1); dismissal for lack of standing is without prejudice. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## III. ARGUMENT

### A. EVERY THEORY THAT DEPENDS ON A CONCEALED LENDER FAILS BECAUSE THE SECOND AMENDED COMPLAINT PLEADS NO FACT THAT WOULD MAKE THE "LENDER" DESIGNATION FALSE

Several claims depend on one premise: UWM was the true lender, and Barrett was falsely identified as “Lender” to conceal UWM’s role. (Doc. 148 at 2–4, 29, 33, 38.) The SAC pleads no fact showing Barrett’s designation was false.

The repayment of the Loan was secured by a Security Deed recorded in the official land records of the County Clerk of the Superior Court of Burke County, Georgia, as Document No

D20240000092, at Book 1307, on Page 295 (the "Mortgage"). On or about January 11, 2024, the Loan and its servicing rights were sold to UWM.

Plaintiff repeatedly alleges that the transaction documents, including the Closing Disclosure, named Barrett as "Lender." (Doc. 148 at 2, 3, 12, 33, 38 (¶¶ 3(b), 7, 49, 105(a), 121(a)).) But she does not allege to whom the obligation was initially payable on the note—the transaction-specific fact relevant to TILA's creditor definition. *See* 15 U.S.C. § 1602(g).

The RICO Case Statement repeats the same concealed-lender theory. (Doc. 148 at 58.) What is missing is a nonconclusory fact showing that Barrett's designation was false.

### 1. UWM's Alleged Status as a Creditor Does Not Make Barrett's Designation False.

TILA contemplates multiple creditors and requires only one to make the disclosures. 15 U.S.C. § 1631(b). Regulation Z likewise permits multiple creditors to choose the disclosing creditor. 12 C.F.R. § 1026.17(d); *id.* pt. 1026, Supp. I, cmt. 17(d)-1.

The Closing Disclosure therefore identifies "[t]he name of the creditor making the disclosure" as "Lender." 12 C.F.R. § 1026.38(a)(4)(iii); *id.* pt. 1026, Supp. I, cmts. 38(a)(4)-3, 37(a)(3)-1. *Garrett v. Fleet Fin., Inc. of Ga.*, 252 Ga. App. 47, 53, 556 S.E.2d 140 (2001), likewise recognized that multiple TILA creditors may exist and only one must disclose.

Thus, even accepting paragraph 105(a)'s assertion that UWM was "the actual creditor" (Doc. 148 at 33), Plaintiff still must plead facts showing Barrett was not a creditor properly identified as the disclosing creditor. She does not.

### 2. Underwriting And Funding Do Not Supply The Missing Facts.

Plaintiff alleges that UWM underwrote and table-funded the loan. (Doc. 148 at 3, 12, 29, 33 (¶¶ 9, 49, 94(b), 105(a)).) Neither fact establishes that Barrett was falsely identified.

TILA and Regulation Z ask, among other things, to whom the obligation was initially payable. 15 U.S.C. § 1602(g); 12 C.F.R. § 1026.2(a)(17)(i). The official commentary specifically contemplates table funding by one person where the debt is initially payable to another. *Id.* pt. 1026, Supp. I, cmt. 36(a)-1.ii.

The SAC never alleges that the note named UWM as payee or that the debt was initially payable to UWM rather than Barrett. Paragraph 9 calls UWM the "actual table-funding lender." (Doc. 148 at 3.) Funding alone does not decide who had to appear as "Lender."

Paragraph 49 alleges post-closing confusion about "who held her loan." (Doc. 148 at 12.) That does not show Barrett was falsely identified as the disclosing creditor at closing.

The SAC also alleges Barrett told Plaintiff before closing she would receive disclosures from UWM; UWM later mailed material to the Property; UWM appeared on the security deed as lender/post-closing contact; and the gift letter bore UWM's name. (Doc. 148 at 12, 21, 28 (¶¶ 49, 78, 90D).) Open or concealed, UWM's participation still does not make Barrett's designation false.

### 3. The Same Defect Defeats Every Claim Premised on A False Or Concealed Lender Designation.

Calling UWM "the actual creditor" is a legal conclusion, not a factual substitute. *Iqbal*, 556 U.S. at 678.

The defect reaches each claim that depends on the same alleged misrepresentation: TILA (Count Three, ¶ 105(a)); the mail- and wire-fraud predicates (Counts One and Two, ¶ 94(b)); fraud (Count Seven, ¶¶ 121(a), 122); negligent misrepresentation (Count Eight, ¶ 127); conspiracy (Count Eleven); and the concealed-lender declaration (Count Twelve, ¶ 141). (Doc. 148 at 29, 33, 38–41, 44–45.)

Plaintiff has amended twice after representing that the SAC would provide the "who, what, when, where, and how" of each Defendant's role. (Doc. 115 at 2; Doc. 145 at 8–9.) Yet she still pleads no fact showing why Barrett's "Lender" designation was false.

### B. COUNTS ONE AND TWO DO NOT PLEAD THE ELEMENTS OF A RICO ENTERPRISE OR PATTERN

Count One alleges a substantive RICO violation under 18 U.S.C. § 1962(c); Count Two alleges conspiracy under § 1962(d). Both rest on the same alleged enterprise, pattern, objective, and conduct. Doc. 148 at 32 (¶ 99).

A civil RICO claim requires a § 1962 violation, injury to business or property, and causation. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066–67 (11th Cir. 2017). Section 1962(c) also requires an enterprise and a pattern of racketeering activity. *Jackson v. BellSouth Telecomms., Inc.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

The SAC and RICO Case Statement describe one residential purchase involving the professionals needed to complete it, one victim, and one loan. They do not plausibly plead an association-in-fact enterprise with a common racketeering purpose or a pattern extending beyond that transaction. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211–16 (11th Cir. 2020); Doc. 148 at 55–62.

Section 1962(d) requires an agreement to violate RICO. A conspiracy claim may survive failure of the substantive claim only if independently sufficient allegations support the conspiracy. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1201–03 (11th Cir. 2025).

Here, Count Two adds no independent theory. It alleges agreement to commit the same deficient § 1962(c) violation and depends on the same enterprise and pattern.

Barrett does not dispute for purposes of this motion that the alleged predicate acts are related or pleaded with particularity, and it does not ask the Court to decide whether Barrett is distinct from the alleged enterprise. Barrett also preserves RICO's proximate-cause requirement. *See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612–13 (2025)("[P]roximate cause is strictly cabined in the RICO context, requiring a direct relationship, not mere foreseeability.")

**1. Plaintiff Describes a Transaction, Not an Enterprise.**

An association-in-fact enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

**Purpose**. Paragraph 92 alleges a purpose of "originating, closing, and profiting from Plaintiff's VA-backed home purchase through fraud." (Doc. 148 at 29.) Stripped of "through fraud," that is the purpose of the closing; with it, the allegation restates the alleged racketeering.

**Relationships**. The Case Statement describes a "structure and division of labor," but the roles are those of the closing itself: referral, origination, appraisal, inspection, and settlement. (Doc. 148 at 60.) Ordinary transactional relationships do not establish a RICO enterprise. *See Almanza*, 851 F.3d at 1072.

**Longevity**. The alleged association formed for Plaintiff's purchase, from November 2023 through the January 9, 2024 closing. (Doc. 148 at 8, 20 (¶¶ 31, 75).) The SAC identifies no common undertaking among these participants beyond that transaction.

**2. The RICO Case Statement Confirms That the Alleged Predicates Arise from One Transaction and Do Not Establish Continuity.**

The Case Statement identifies Plaintiff as "[t]he victim of the racketeering activity," and its predicates concern her loan and closing. (Doc. 148 at 57.)

That does not establish closed-ended continuity. The Eleventh Circuit measures a "substantial period" in years and has held nine months insufficient. *Cisneros*, 972 F.3d at 1216; *Jackson*, 372 F.3d at 1266–67. The alleged origination scheme lasted weeks.

**3. Nor Does Plaintiff Plead Open-Ended Continuity.**

Paragraph 96A adds later concealment, servicing, transfer, foreclosure activity, and collection on the same loan. (Doc. 148 at 31.) Concealment of an initial fraud does not establish open-ended continuity, *Jackson*, 372 F.3d at 1267–68, and the SAC identifies no other victim, transaction, or facts showing fraud as Defendants' regular way of doing business.

*Cisneros* is directly on point: independently chargeable mail or wire fraud does not establish a RICO pattern when the acts "arise from a single transaction." 972 F.3d at 1216. More communications about Plaintiff's purchase and financing do not transform that transaction into a RICO pattern. *See Med. Marijuana*, 604 U.S. at 613.

**4. Count Two Still Fails Because It Adds Nothing to Count One.**

Count Two alleges agreement to commit the same § 1962(c) violation. (Doc. 148 at 32 (¶ 99).) It adds no separate agreement, enterprise, pattern, objective, or course of conduct. *Otto Candies* therefore does not save it; the conspiracy theory adds nothing independently sufficient.

**C. COUNT THREE IS TIME-BARRED UNDER 15 U.S.C. § 1640(e)**

The loan closed January 9, 2024. (Doc. 148 at 20 (¶ 75).) TILA required any damages action within one year of the violation. 15 U.S.C. § 1640(e). The period expired January 9, 2025; Plaintiff filed September 2, 2025. (Doc. 1 at 1.)

For disclosure violations, the violation occurs at consummation; nondisclosure is not continuing. *Smith v. Am. Fin. Sys., Inc. (In re Smith)*, 737 F.2d 1549, 1552 (11th Cir. 1984); *Frazile*

*v. EMC Mortg. Corp.*, 382 F. App'x 833, 838 & n.2 (11th Cir. 2010). Paragraph 105 challenges closing disclosures, so the alleged violations were complete January 9, 2024.

Plaintiff invokes equitable tolling in paragraphs 106 and 146–49. TILA permits tolling, *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998), but when untimeliness appears on the face of the complaint, the pleading must allege facts supporting tolling. *La Grasta*, 358 F.3d at 845–46.

The SAC alleges concealment and an incomplete closing file, but also that Plaintiff possessed a digital copy of transaction documents emailed around closing. (Doc. 148 at 23 (¶ 80B).) Those allegations may bear on later-discovered misconduct; they do not explain why she could not timely challenge the disclosures she now attacks.

The SAC also alleges that by July 2024 Plaintiff had reported "the fraud and problems with the loan," and by August 9 she had reported document alterations to law enforcement. (Doc. 148 at 16, 24 (¶¶ 63, 83).) Those allegations do not establish discovery of every TILA theory, but they undermine the claim that the transaction remained wholly concealed through January 2025.

Count Three is untimely on the pleaded dates, and the SAC does not plead a sufficient basis to toll the one-year period for these disclosure violations.

### D. COUNT FOUR FAILS UNDER BOTH RESPA PROVISIONS IT INVOKES

Count Four invokes § 2605, governing a servicer's response to a qualified written request, and § 2607(a), prohibiting a fee, kickback, or thing of value paid pursuant to an agreement to refer settlement-service business. *See* 12 U.S.C. §§ 2605(e), 2607(a); *Culpepper v. Inland Mortg. Corp.*, 132 F.3d 692, 696 (11th Cir. 1998).

Neither theory is plausibly pleaded against Barrett. Section 2605 concerns servicing conduct attributed to other defendants; § 2607 alleges a referral but no payment or thing of value.

Section 2605. The count directs this theory to Mr. Cooper/Nationstar and Lakeview; paragraph 110 alleges their deficient responses, and paragraph 83 alleges Mr. Cooper began servicing in August 2024. (Doc. 148 at 24, 34.) The SAC alleges no qualified written request to Barrett or deficient response by Barrett.

Section 2607. Paragraph 109 details a referral to Barrett but pleads no fee, kickback, or thing of value exchanged for it. Instead, Plaintiff says the existence and terms of any such arrangement are "within [Defendants'] control and are the subject of discovery." (Doc. 148 at 34 (¶ 109).)

That is not a pleaded fact. Allegations on information and belief may rest on identified factual sources, *see Otto Candies*, 137 F.4th at 1176–78, but paragraph 109 identifies none.

A referral alone does not violate § 2607(a). *Culpepper* requires a thing of value, an agreement to refer settlement business, and an actual referral. 132 F.3d at 696. Plaintiff pleads the referral, not the payment.

### E. COUNT SIX FAILS BECAUSE NO PLEADED FACT CONNECTS THE CHALLENGED LOAN TERMS TO RACE OR HANDICAP

Count Six alleges that Defendants discriminated against Plaintiff in connection with the origination of her mortgage loan because of her race and disability, in violation of the Fair Housing Act. Plaintiff's theory appears to rest on three principal allegations: that Defendants used and allegedly inflated her VA disability income to qualify her for the loan; that they deprived her of the VA escape-clause protection; and that the loan was otherwise originated on unfair or predatory

terms that she contends would not have been imposed on a non-disabled or non-minority borrower. Doc. 148 at 13–14, 36 (¶¶ 50, 53–54, 117–18).

For purposes of this motion, Barrett does not dispute that Plaintiff is a member of a racial minority, has a handicap within 42 U.S.C. § 3602(h), or that § 3605 applies to Barrett as the lender. The defect is not Plaintiff's protected status. The defect is the absence of facts showing that Barrett treated her differently because of her race or handicap. The SAC alleges challenged conduct, but it does not plead facts connecting that conduct to either protected characteristic.

Paragraph 117 invokes both 42 U.S.C. §§ 3604 and 3605. As pleaded against Barrett, § 3605 is the direct statutory fit because the challenged conduct concerns the making and terms of a residential real-estate-related transaction. The SAC does not allege that Barrett sold or rented the Property to Plaintiff.

**1. The VA Escape Clause Does Not Turn on Disability Status.**

Plaintiff alleges that Defendants "stripped" the escape clause required by 38 C.F.R. § 36.4303(k). (Doc. 148 at 13–14, 36 (¶¶ 53–54, 118).) But entitlement to that clause turns on the characteristics of the VA-guaranteed transaction, not on disability status.

Section 3605 prohibits discrimination "because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). Veteran status is not among those characteristics. Nor do the conditions triggering § 36.4303(k) turn on a service-connected disability; they concern the nature of the VA transaction, the contract price, and the reasonable value established by the Secretary. The regulation's consequence for noncompliance concerns issuance of the VA guaranty.

Thus, the alleged omission of a protection afforded by the VA loan program does not itself plead discrimination because of handicap.

**2. The Remaining Disability Allegations Identify No Discriminatory Loan Term.**

Paragraph 118 alleges that Thornton, Barrett, and UWM "built the loan on Plaintiff's VA disability income, inflated that income, and stripped the VA escape clause," and concludes that non-disabled borrowers would not receive the same treatment. (Doc. 148 at 36.)

That conclusion lacks a supporting fact. Section 3605 reaches discrimination "in making available" a residential real estate-related transaction or "in the terms or conditions" of the transaction because of handicap. 42 U.S.C. § 3605(a). But using income Plaintiff received to qualify her for a loan does not itself allege discrimination because the income derived from disability benefits. And Plaintiff's objection to the income figure is that Defendants overstated it, not that they refused to count it or imposed an adverse term because of its source.

The SAC identifies no rate, fee, condition, or other loan term imposed because Plaintiff was disabled. Paragraph 118's assertion that a non-disabled borrower "would not have been subjected to the same exploitation" states the statutory conclusion, not a fact connecting the alleged exploitation to handicap. (Doc. 148 at 36.) *See Iqbal*, 556 U.S. at 678.

**3. The SAC Likewise Pleads No Racial Basis For The Challenged Transaction.**

The SAC's principal racial-discrimination theory is reverse redlining. Under the standard applied in *Horne v. Harbour Portfolio VI, LP*, 304 F. Supp. 3d 1332, 1339–40 (N.D. Ga. 2018), a plaintiff must allege predatory or unfair lending practices and either intentional targeting based on race or a disparate impact. Barrett does not contend that Plaintiff must plead a comparator to state such a claim.

The SAC does not plead either route. It identifies no rate, APR, fee, points, prepayment penalty, balloon provision, or other loan term imposed because of race. Nor does it identify a

Barrett policy or practice directed at minority borrowers. Plaintiff alleges instead that her own agent referred her to Barrett. (Doc. 148 at 9 (¶ 36).)

The SAC also pleads a different reason for the challenged transaction: paragraph 50 alleges that Plaintiff's true income would not have qualified her, so Defendants inflated it and rushed the loan to avoid scrutiny. (Doc. 148 at 13.) That allegation may support other theories, but it does not connect Barrett's conduct to race.

The Eleventh Circuit has instructed that "the allegations in the complaint should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997)). Count Six does not plead those elements with respect to Barrett.

### F. COUNTS SEVEN, EIGHT, AND NINE FAIL BECAUSE THE ALLEGED MISREPRESENTATIONS DID NOT CAUSE PLAINTIFF'S PLEADED LOSSES

Counts Seven, Eight, and Nine assert three different state-law theories arising from the same alleged loan-origination conduct. Count Seven alleges fraud and fraudulent concealment; Count Eight alleges negligent misrepresentation; and Count Nine alleges breach of contract. Although the theories differ, each requires Plaintiff to connect Barrett's alleged conduct to a legally cognizable injury.

**Count Seven — Fraud.** Under Georgia law, fraud requires "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Crawford v. Williams*, 258 Ga. 806, 806, 375 S.E.2d 223 (1989). A plaintiff must establish each element. *Id.* Thus, even a sufficiently particularized false

statement does not state a fraud claim unless Plaintiff also pleads that Barrett intended her to act on it, that she justifiably relied on it, and that the reliance caused her claimed loss.

**Count Eight — Negligent Misrepresentation.** Georgia recognizes three essential elements: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Smiley v. S & J Invs., Inc.*, 260 Ga. App. 493, 498, 580 S.E.2d 283 (2003); *see* also *Sarif v. Novare Grp., Inc.*, 306 Ga. App. 741, 703 S.E.2d 348 (2010). Count Eight therefore requires more than an allegation that Barrett supplied inaccurate information to someone. Plaintiff must plead that she reasonably relied on that information and suffered economic injury proximately caused by that reliance.

**Count Nine — Breach of Contract.** A Georgia breach-of-contract claim requires "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305 (2010). The SAC therefore must identify a contractual obligation owed by Barrett, facts showing Barrett breached that obligation, and damages resulting from the breach.

The SAC does not adequately plead those requirements. Counts Seven and Eight principally rely on the inflated income figure, but plead no facts showing that Plaintiff received and relied on that figure or that it caused the mortgage and Property-related losses she seeks. (Doc. 148 at 38–41.) Count Nine identifies the loan documents generally as the contract but no contractual term Barrett failed to perform. (*Id.* at 42.)

Particularity is not the problem; causation is. Barrett does not contend that the income allegations lack particularity. The SAC identifies the allegedly false figure, the allegedly correct range, the document containing the figure, the person responsible, and the time period. (Doc. 148

at 13, 38 (¶¶ 50–52, 121(a)).) Nor does Barrett challenge the general allegation of knowledge. The defect is causation.

Count Seven attributes to Barrett an inflated monthly-income figure of $4,527.50. (Doc. 148 at 13, 38 (¶¶ 51, 121(a)).) Plaintiff's pleaded losses are different: the $160,000 mortgage obligation and losses arising from the condition of the Property. (*Id.* ¶¶ 90, 97, 152–55.)

Georgia permits fraud damages only for injury caused by the misrepresentation. O.C.G.A. § 51-6-2(a); *Crawford*, 258 Ga. at 806. Damages merely traceable to the act, but not its legal and natural consequence, are too remote. O.C.G.A. §§ 51-12-8, -9. This Court has likewise dismissed a fraud claim where the plaintiffs failed to allege how their claimed damages were caused by the alleged misrepresentation. *Keil v. Lagroon*, No. 1:21-cv-00170-JRH-BKE, slip op. at 20 (S.D. Ga. Sept. 28, 2022).

The SAC does not plausibly plead the $160,000 principal balance, standing alone, as a loss caused by the income figure. It alleges a $160,000 loan used in Plaintiff's purchase and that Plaintiff still owns the Property while remaining obligated on the mortgage. (Doc. 148 at 1–2, 12, 27 (¶¶ 2, 47, 90).) The alleged income representation described Plaintiff; it did not concern the Property's condition or the loan's price or stated terms. The SAC does not allege a value differential attributable to that income figure.

The Property-related losses are likewise disconnected from that figure. Plaintiff attributes the mold, HVAC condition, fireplace, wiring, inspection, and appraisal to other actors by name. (Doc. 148 at 19, 39–40 (¶¶ 71, 121(e), (f), (i)).) Those conditions existed independently of Barrett's alleged income representation. Plaintiff may argue that the loan would not have closed without the inflated figure, but that does not plead that the figure proximately caused the condition of the house or the resulting repair and displacement losses.

**1. Several Remaining Fraud Theories Were Not Representations Made to Plaintiff.**

Paragraph 121(a) pleads several additional theories against Barrett, but many do not involve a statement made to Plaintiff. The income figure appears on UWM's Loan Approval Conditions. (Doc. 148 at 13 (¶ 51).) The Uniform Residential Loan Application is alleged to be a document "in the file," and Plaintiff alleges she did not review or knowingly execute it. (*Id.* ¶ 80B.) The gift letter contains a representation made by Plaintiff, not to her, and she alleges she knew the funds were repayable when it was completed. (*Id.* ¶¶ 90D, 121(a).)

Georgia fraud requires a misrepresentation made to induce the plaintiff to act. O.C.G.A. § 51-6-2(a). As to statements never communicated to Plaintiff, the SAC pleads no facts showing that she relied on them.

The remaining theories fare no better. The alleged licensing issue is not connected to a pleaded loss; the December 22 email was sent to others and allegedly identified the loan as VA; the "Lender" theory fails for the reasons above; and ordering and paying for an appraisal, without an alleged agreement as to value, is conduct rather than a misrepresentation. (Doc. 148 at 38–40 (¶ 121(a)).)

**2. Count Eight Pleads No Reliance on the Information Barrett Allegedly Supplied.**

Count Eight alleges that Barrett and others "negligently supplied and relied upon false income and loan-type information," and that Plaintiff justifiably relied. (Doc. 148 at 41 (¶ 127).) But the factual allegations plead that Barrett supplied the information to UWM and that Plaintiff "had no independent means to know" her income had been inflated. (*Id.* ¶ 123A.)

A plaintiff cannot rely on a figure she alleges she never received. Count Eight therefore fails as to the income figure, and its remaining theories fail on causation for the same reasons as Count Seven.

#### 3. Count Nine Identifies No Contractual Term Barrett Breached.

Count Nine identifies the loan documents as the contract and alleges that Barrett breached by "originating and funding the loan on fraudulent, inflated, and misrepresented terms." (Doc. 148 at 42 (¶ 130(f)).)

That allegation describes alleged misconduct in performing the transaction but identifies no express or implied contractual term Barrett failed to perform. (Doc. 148 at 42 (¶ 130(f)).) Count Nine therefore does not plead a breach of the loan agreement as to Barrett.

### G. COUNT ELEVEN PLEADS NEITHER AN AGREEMENT NOR A LOSS-CAUSING ACT PURSUANT TO ONE

Count Eleven asserts a Georgia civil-conspiracy claim against Barrett and the other Defendants. Civil conspiracy is not an independent tort under Georgia law. Rather, it is a theory for imposing liability for tortious acts committed pursuant to a common agreement. As the Georgia Supreme Court has explained, "[t]here is no such thing as a civil action for conspiracy," but there is an action "for damages caused by acts pursuant to a formed conspiracy." *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 264 Ga. 295, 297, 443 S.E.2d 833 (1994).

To state such a claim, Plaintiff must plead facts showing that two or more persons acted in concert pursuant to an agreement or common design to accomplish an unlawful end, or to accomplish a lawful end by unlawful means, and that acts committed pursuant to that agreement caused Plaintiff's injury. *See McIntee v. Deramus*, 313 Ga. App. 653, 656, 722 S.E.2d 377 (2012); *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207, 573 S.E.2d 455 (2002). The

agreement need not be express; it may be inferred from conduct. But the pleaded facts must support a plausible inference of a mutual understanding to pursue an unlawful design. *See McIntee*, 313 Ga. App. at 656.

Count Eleven therefore requires two things the SAC does not plead as to Barrett: facts supporting an unlawful agreement and facts showing that a tort causing Plaintiff's loss was committed pursuant to that agreement.

**1. No Agreement Is Pleaded.**

Paragraph 138 alleges that Defendants' "interlocking roles" in the referral, origination, appraisal, inspection, closing, and other challenged conduct "reflect a coordinated agreement rather than independent conduct." (Doc. 148 at 44.)

But complementary roles are inherent in a residential closing. Agents refer, lenders originate, appraisers value, inspectors inspect, and attorneys close. The fact that those functions fit together shows coordination necessary to complete the transaction; it does not, without more, show an agreement to commit fraud. Paragraph 138 asks the Court to infer an unlawful agreement from conduct equally consistent with each participant's ordinary role. *Twombly* requires more than "[a] conclusory allegation of agreement at some unidentified point." 550 U.S. at 556.

The specific communications alleged do not supply what paragraph 138 lacks. Paragraphs 36 and 37 allege that Plaintiff's agent referred her to Thornton as a lender who might obtain a higher approval amount and urged Plaintiff to switch lenders. That communication was made openly to Plaintiff and, as pleaded, proposes nothing unlawful. Count Four relies on the same referral but alleges no payment or other consideration for it. (Doc. 148 at 34 (¶ 109).)

Paragraph 57 alleges that Barrett ordered the appraisal, was billed $650, and paid the invoice after closing. (Doc. 148 at 14.) Those facts fit Barrett's role in the transaction. The SAC

alleges no communication between Barrett and the appraiser concerning a desired value or agreement as to value.

Nor does the SAC plead any communication between Barrett and the seller, seller's agent, inspector, or closing attorney showing an unlawful agreement. (Doc. 148 at 44 (¶¶ 137–38).) Because the alleged object of the conspiracy is fraud, conclusory allegations of coordination do not substitute for facts supporting a plausible inference of agreement. *See Twombly*, 550 U.S. at 556.

**2. The SAC Pleads No Loss-Causing Tort Committed Pursuant to the Alleged Agreement.**

Even if the SAC adequately alleged an agreement, Plaintiff must still plead a tortious act committed pursuant to that agreement that caused her injury. A conspiracy, standing alone, is not actionable. *See U.S. Anchor*, 264 Ga. at 297.

Paragraphs 137 and 138 allege that Defendants acted "pursuant to a common design and understanding" and committed tortious acts "in furtherance" of the scheme. (Doc. 148 at 44.) Those phrases state the conclusion the claim requires; they do not identify a loss-causing act committed pursuant to an agreement with Barrett. *See Iqbal*, 556 U.S. at 678.

The Statement of Facts instead attributes the conduct producing the Property-related losses to identified actors performing their respective roles: the seller allegedly concealed defects, the inspector failed to report them, and the appraiser allegedly misstated the Property's condition. (Doc. 148 at 19, 39–40 (¶¶ 71, 121(e), (f), (i)).) What the SAC does not plead is a fact showing that any of those acts was undertaken pursuant to an agreement with Barrett rather than independently.

The SAC attributes separate alleged wrongs to different participants in the same transaction but does not plead facts connecting Barrett to the underlying torts through an unlawful agreement. (Doc. 148 at 38–40, 44.) That is insufficient to impose conspiracy liability.

Without facts supporting the alleged agreement and tying a loss-causing tort to it, Count Eleven fails as to Barrett.

### H. COUNT TWELVE'S INJUNCTIVE RELIEF FAILS FOR LACK OF A THREATENED INJURY REDRESSABLE BY BARRETT

Plaintiff directs the conduct she asks the Court to enjoin to other defendants. Paragraph 110 directs servicing allegations to Mr. Cooper, Nationstar, and Lakeview; paragraph 86 attributes foreclosure notices to servicing Defendants and alleges foreclosure was later abandoned; Count Five identifies other defendants as furnishers of credit information; and the VA is not a party. (Doc. 148 at 1, 25, 34–35.)

Prospective injunctive and declaratory relief require an actual, continuing controversy and a real and immediate threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102–06 (1983); *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–48 (11th Cir. 1999). The Eleventh Circuit has explained that, for declaratory relief, there must be a "substantial continuing controversy" between adverse parties, and the threatened injury cannot be "conjectural, hypothetical, or contingent." *Malowney*, 193 F.3d at 1347 (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). Past injury alone is insufficient where the plaintiff cannot show a reasonable expectation that the injury will continue or recur. *Id.* at 1348.

The SAC does not plead such a threatened future injury by Barrett. It alleges that Plaintiff "has not lost the Property to foreclosure" and remains obligated on the mortgage. (Doc. 148 at 27 (¶ 90).) That describes a present condition, not a threatened future act by Barrett. This Court

previously denied Plaintiff's request for temporary and preliminary injunctive relief. (Doc. 15, at 5; *see* Doc. 145, at 2.)

The requested injunctions also fail for lack of redressability as to Barrett. Enjoining Barrett from foreclosing would redress nothing because the SAC attributes the foreclosure notices to other defendants and alleges that foreclosure was abandoned. Enjoining Barrett from collecting or reporting would likewise redress nothing because those acts are attributed to the servicers and other defendants. And an order directing that Plaintiff's VA entitlement be relieved of the loan would not bind the agency that administers that entitlement because the VA is not before the Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiff's request for declaratory relief requires separate treatment because Barrett is the grantee named in the instrument Plaintiff seeks to void. Barrett therefore does not contend that it is categorically an improper party to a declaration concerning that instrument. But the federal Declaratory Judgment Act is procedural; it does not itself supply the substantive legal right Plaintiff needs. *See* 28 U.S.C. § 2201; *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005). Plaintiff must still identify a substantive legal right that entitles her to the declaration she seeks, and there must remain an actual controversy concerning that right. *See Malowney*, 193 F.3d at 1346–48.

Thus, to the extent Plaintiff seeks a declaration that the loan or security instrument is void because of the alleged concealed-lender theory or other substantive violations asserted in the SAC, that requested declaration depends on the viability of those underlying claims. If the substantive claims supplying the asserted basis for invalidity are dismissed, the request for declaratory relief does not survive independently merely because Plaintiff has requested a declaration.

Because the standing defect as to prospective injunctive relief is jurisdictional, dismissal of that relief should be without prejudice. *See Stalley*, 524 F.3d at 1232.

One additional request fails as a matter of law. Paragraph 157 seeks "statutory damages" under the Fair Housing Act, but 42 U.S.C. § 3613(c)(1) authorizes actual and punitive damages, not statutory damages.

## I. COUNT THIRTEEN FAILS BECAUSE THE SAC PLEADS NO INTENTIONAL RACE DISCRIMINATION BY BARRETT IN THE MAKING OR ENFORCEMENT OF A CONTRACT

Count Thirteen alleges that Barrett and the other Defendants violated 42 U.S.C. § 1981 by discriminating against Plaintiff on the basis of race in connection with the making and enforcement of her mortgage loan. Section 1981 guarantees all persons the same right "to make and enforce contracts" as is enjoyed by white citizens. 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, as well as the enjoyment of the benefits, privileges, terms, and conditions of the contractual relationship. *Id.* § 1981(b).

To state a race-discrimination claim under § 1981, Plaintiff must plead facts showing that she is a member of a racial minority, that Barrett intentionally discriminated against her because of race, and that the discrimination concerned an activity protected by § 1981. *See Jackson*, 372 F.3d at 1270. The Eleventh Circuit has also summarized the pleading requirement as intentional racial discrimination that caused a contractual injury. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). And under *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, Plaintiff must plausibly allege that race was a but-for cause of the impairment of her contractual rights. 140 S. Ct. 1009 (2020).

For purposes of this motion, Barrett does not dispute that Plaintiff is a member of a racial minority or that the mortgage transaction involved rights protected by § 1981. The defect is intentional discrimination and causation. The SAC pleads no fact showing that Barrett took any action against Plaintiff because of her race, much less that race was a but-for cause of any impairment of her contractual rights.

Paragraphs 145A through 145D identify no racially discriminatory statement by Barrett, Barrett policy directed at minority borrowers, comparator, or loan term imposed because of race. (Doc. 148 at 46.) Paragraph 50 instead alleges that Defendants inflated income and rushed the transaction because Plaintiff otherwise would not qualify. (*Id.* at 13.) Whatever else that may support, it does not plausibly allege that Barrett acted because of race.

The same is true of Plaintiff's other Barrett-specific allegations. The alleged lender designation, inflated income figure, referral, appraisal-related conduct, and loan origination are all challenged as fraudulent, improper, or predatory, but the SAC does not plead facts connecting any of them to Plaintiff's race. Section 1981 does not convert allegedly wrongful conduct into racial discrimination merely because the plaintiff is a member of a racial minority. The statute requires intentional race discrimination affecting contractual rights. *See Jackson*, 372 F.3d at 1270; *Ziyadat*, 3 F.4th at 1296.

*Comcast* requires more than alleging race as a possible contributing factor. Plaintiff must plead facts supporting a plausible inference that, but for her race, she would not have suffered the alleged contractual injury. The SAC pleads no such facts as to Barrett.

Because Count Thirteen does not plausibly allege that Barrett intentionally discriminated against Plaintiff because of race or that race was a but-for cause of any impairment of her right to make or enforce the mortgage contract, Count Thirteen fails as to Barrett.

## IV. CONCLUSION

Barrett Financial Group, LLC respectfully requests that the Court enter the order dismissing Counts One, Two, Seven, Eight, Nine, Eleven, and Thirteen as to Barrett; dismissing Count Three with prejudice; dismissing Count Four as to Barrett, with prejudice as to the § 2605 theory; dismissing Count Six as to Barrett, with prejudice as to the escape-clause theory; dismissing Count Twelve's declaratory-relief request to the extent it depends on substantive claims dismissed as to Barrett; and dismissing, for want of Article III standing and without prejudice, the prospective injunctive relief requested against Barrett in Count Twelve.

If the federal claims against Barrett are dismissed, the Court may decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). Barrett does not press that alternative and notes only that any dismissal on that basis should be without prejudice to refiling the state-law claims in state court.

The Barrett-specific theories principally attack the allegedly inflated income figure and lender designation. (Doc. 148 at 33, 38.) The SAC alleges a $160,000 mortgage used to purchase the Property, which Plaintiff still owns, and attributes the Property-condition allegations to the seller, inspector, appraiser, and others. (*Id.* at 20, 27, 38–40.) It does not plausibly connect those losses to actionable conduct by Barrett.

Dated: September 8, 2026.

*By: /s/ Roger A. Wright*
Roger A. Wright
(Admitted Pro Hac Vice)
Arizona Bar No.: 014105
Wright Law Firm, PLC
4140 E. Baseline Road, Suite 101
Mesa, Arizona 85206
Telephone: (480) 558-1700
Email: office@wrightlawaz.com

Brian S. Goldberg
Georgia Bar No.: 128007
Buchalter LP
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Email: bgoldberg@buchalter.com

*Attorneys for Barrett Financial Group, LLC*

**CERTIFICATE OF SERVICE**

I, counsel for Defendant Barrett Financial Group, LLC, certify that on September 8, 2026, I electronically filed the foregoing Memorandum in Support of Barrett Financial Group's Motion to Dismiss Plaintiff's Second Amended Complaint through CM/ECF, which will send notice to all counsel of record. I further certify that I served a true and correct copy on any party not receiving CM/ECF notice by U.S. Mail, postage prepaid, addressed as follows:

Nikki Harper
1529 Pinebrook Court, Apt A2
Greenville, NC 27858
Plaintiff Pro Se

DATED: September 8, 2026.

*By: /s/ Roger A. Wright*
*Attorneys for Defendant*
*Barrett Financial Group, LLC*